## Y. W. SHELTON v. STATE OF FLORIDA

26 So. (2nd) 444                                    January Term, 1946
May 28, 1946                                                 Division B

Davis, Davis & McClure and W. T. Davis, for appellant.

J. Tom Watson, Attorney General, and Reeves Bowen, Assistant Attorney General, for appellee.

THOMAS, J.:

The appellant was convicted of having testified, before a special master in his suit for divorce, that his wife lived at McRae, Georgia, when he know that she dwelt at the home of her mother in Hapeville, Georgia. He was adjudged guilty of perjury, and appealed.

It seems appropriate first to determine whether the place of residence of the defendant in the divorce case was material to such a degree that false testimony about it would constitute perjury. An essential element of this crime is the untruth of a statement made under oath anent some matter material to the main or a secondary issue. The matter bears this character if it " 'could have influenced the tribunal on the issue before it.' " Fields v. State, 94 Fla. 490, 114 So. 317. Certainly the domicile of a defendant is an important allegation in a bill of complaint. It is provided in Section 63.28, Florida Statutes, 1041, and F.S.A., that "it shall be sufficient that a bill in equity shall contain: Frst: The name, and when known, the residence of each plaintiff and defendant," etc. It follows that testimony supporting such an averment would be

relevant; whether a misstatement with reference to it would be so vital as to amount to perjury would depend on the circumstances, as we shall demonstrate.

In the divorce case the appellant had alleged that his wife lived in McRae. It is conceivable that her residence could have become inconsequental had she been served with process personally, or appeared in the case, State v. Rowe, 149 Fla. 494, 6 So. (2nd) 267, but she was made a party by constructive service, and she did not appear. As a matter of fact, the evidence tends to show that she first learned of the suit long after the decree was entered. Attached to the bill was an affidavit executed by appellant containing the statement that the defendant lived in McRae and received her mail there, "general delivery." On the strength of this representation, under oath, the clerk of the circuit court addressed an order to appear to "Rosabell Shelton [the wife], General Delivery, McRae, Georgia. The same designation appears in the affidavit of the publisher and the clerk's certificate of publishing, posting, and mailing. Upon failure of the defendant to respond to the notice a decree pro confesso was entered at the instance of appellant's counsel.

It is patent to us that under such corcumstances, as suggested in State v. Rowe, supra, the residence of the defendant became quite material. If appellant had testified that she was in Hapeville instead of McRae, the master and the chancellor would have immediately discovered that the court had no jurisdiction of defendant's person, the service having been based entirely on an incorrect or untrue affidavit. But appellant's testimony corresponded with the allegations in his bill and the statement in his affidavit; consequently there was no cause then to suspect that a fraud on the court and the defendant was being perpetrated.

This brings us to a consideration of the remaining elements of the offense charged—namely, the falsity of the testimony given by the appellant and his knowledge that it was untrue. The record reveals an amazing disregard of truth on his part. For instance, there was credible evidence that he and his wife were actually living together at Eastman, Georgia, at the very time, 15 June 1944, he filed his bill and swore that

she lived in McRae; that the relationship continued until he left her on the 6th of the following month. Two days before he departed and nineteen days after institution of the suit he, by his own admission, voted in an election at Eastman, obviously assuming the role of citizen of Georgia. On 10 July he was in Brunswick in the same state, and posted there a letter addressed to his wife at Box 54, Eastman, asking her to leave his personal effects at a certain place. The day this letter was mailed, so she testified, he telephoned her he would not return and asked her what she intended to do, to which she replied that she was going home, and she added on the witness stand that he understood what she meant because he had known since 1926 that her mother lived in Hapeville. She testified, too, that she went to Hapeville and had been there ever since. Defendant rebutted all this, or attempted to, by saying that he had rented a room at a rooming house at a stated address in Jacksonville. It is fair deduction that he was attempting to establish a residence in Florida for the purpose of obtaining a divorce, the while living with the defendant in Georgia. Finally the state, to counteract this testimony, introduced a highway patrolman who testified unequivocally that there was no rooming house at such address.

There is plenty of evidence, corroborated, that the appellant testified falsely and that he knew he was doing so. Inasmuch as we are convinced that, in the situation we have described, evidence relative to the residence of the defendant in the divorce case was material, we can reach no logical conclusion but that the judgment should be—

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.