235 So.2d 40 (1970)
John J. SWEET, Appellant,
v.
STATE of Florida, Appellee.
No. 68-614.
District Court of Appeal of Florida, Second District.
April 17, 1970.
Rehearing Denied May 18, 1970.
James M. McEwen and Raymond E. LaPorte, LaPorte, Ragano and Tampa, for appellant.
Earl Faircloth, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, and Michael N. Kavouklis, Asst. Atty. Gen., Lakeland, for appellee.
McNULTY, Judge.
Appellant directly appeals from his conviction and life sentence for the first degree murder of Charles V. Maxcy. We reverse.
The theory of the State's case is that for some time prior to the murder of "Von" Maxcy, who was a man of considerable opulence, the appellant was having an illicit love affair with the victim's wife, Irene Maxcy; and that he, appellant, procured the murder of Maxcy so that he could "have" Irene Maxcy together with the substantial wealth she stood to acquire. The State sought to prove, inferentially, that the actual killers were one Kelly and one Von Etter who, it was said, came down from Boston for the purpose. To establish this theory, and after showing the corpus delicti, the prosecution relied almost exclusively on the testimony of Irene Maxcy. Some forty-three other witnesses, whose testimony liberally contributed to the more than fifteen hundred pages of this record, were employed primarily to corroborate the critical aspects of the widow's testimony and to circumstantially place the two Boston men, identified as Kelly and Von Etter as we've mentioned, near the scene of the murder.[1]
In addition to Irene Maxcy, there was another important prosecution witness, C.R. Trulock, who was an investigator in the case for the Florida Bureau of Law Enforcement. Trulock's incriminating testimony related to alleged offers, made prior to trial by appellant, to plead guilty to something less than first degree murder in exchange for a lighter sentence. There were no eyewitnesses who testified, nor *41 were Kelly or Von Etter produced. So, except for the corpus delicti and the alleged inculpatory statements or admissions made to the aforesaid two chief prosecution witnesses, the State's case was entirely circumstantial.
Now, prior to the indictment returned herein against appellant, Irene Maxcy was granted contractual immunity by the State; and she testified before the grand jury. At trial, however, she was established as a hostile witness by the State, and was called as a court's witness. Briefly, her testimony was that she had nothing to do with her husband's murder but that she knew appellant wanted to murder him. She admitted to a meretricious relationship with appellant; and testified that on numerous occasions, the last being the night before the murder, appellant had told her that he was going to have Von killed so that he could "have" her. She related that appellant had confided to her that he had underworld connections in Boston, and that he was making the arrangements for "killers" to come down from there to do the job. She told of numerous telephone calls to Boston made by appellant prior to the murder, some of which she witnessed and others of which were related to her by appellant. These calls were allegedly in furtherance of appellant's efforts to procure Von Maxcy's murder. And she told of several trips to Boston made by appellant which he had said were also in furtherance of his nefarious plan. Finally, she testified that after the murder the appellant moved into her house, and on numerous occasions told her that he had, in fact, procured the murder, and related to her many details of how it was done. Indeed, she said, she gave him over $35,000.00, although he had requested as much as $75,000.00, so that he could pay off the murderers and defray some of his own "expenses" incurred in making the arrangements. In essence, then, Irene Maxcy's testimony was to the effect that prior to the murder appellant had told her he was going to kill her husband, and after the murder he told her he had done so. Nonetheless, if believed by a jury, her testimony, together with the evidence of the corpus delicti, is sufficient to support the verdict returned herein.
The corroborating testimony referred to earlier tended, by sheer overwhelming weight of coincident events, to negate mere happenstance of all the incriminating circumstances; and the ponderous, authenticated documentary evidence of phone calls, trips to and from Boston by appellant and by "Kelly" and "Von Etter", motel records and various bank records, all relevant in point of time, may tend to corroborate Irene Maxcy's testimony. But the substance of the State's case, as noted, is bottomed squarely on her credibility. To a lesser extent, though just as importantly, it rests on the credibility of C.R. Trulock.
Accordingly, counsel for appellant attempted at trial to attack the credibility of both Irene Maxcy and Trulock by a showing that they had an interest and bias antagonistic to appellant. But the trial judge denied proffers, made outside the presence of the jury, of cross-examination of these two witnesses, tending to prove such interest and bias. Appellant assigns as error the denial of these proffers.
During the excluded proffer of Trulock's testimony he expressly denied developing a romantic interest in Irene Maxcy; he denied having sexual intercourse with Irene Maxcy; he denied expressing a desire to Irene Maxcy to get appellant convicted so that he, Trulock, and she could take a trip to the Bahamas; and he denied ever getting a substantial amount of money from Irene Maxcy during the afore-charged romantic involvement.
Irene Maxcy, on the other hand, during the proffer of her cross-examination by counsel for appellant, testified directly contrary to the foregoing denials by Trulock. She said that Trulock frequently expressed a romantic interest in her and told her that he had to "have" her; she said that *42 he was jealous of her, that he was with her almost daily, as often as two or three times a day, and that they took brief trips, socialized and drank together almost every day; she admitted having sexual intercourse with him; she testified that he expressed the need to get appellant convicted so that he and she could "go to the Islands"; and she testified that she let him have $5,000.00, upon his request, for the purchase of gifts for his wife and daughter.
All in all, not only did the foregoing proffers tend to show a possible material bias or interest on the part of the two chief witnesses, particularly as to Trulock, but they also clearly focused on the fact that one or both of such witnesses was considerably less than truthful, thus going to the credibility of each. Therefore, to exclude such testimony was reversible error. The trial judge otherwise ably handled the long and tedious trial with commendable patience and astute perception, but the proffered cross-examination in question went directly to undermine the very foundation of the State's case, i.e., the credibility of Irene Maxcy and of C.R. Trulock. Its exclusion was a substantial frustration of appellant's right to effective cross-examination, and comes within the direct purview of our holding in Kirkland v. State[2] in which we reaffirmed the rule that:
"For the purpose of discrediting a witness, a wide range of cross-examination is permitted, as a matter of right, in regard to his motives, interest, or animus, as connected with the cause or with the parties thereto, upon which matters he may be contradicted by other evidence, * * *." (Italics supplied)
We have carefully reviewed the other points raised on appeal and find them to be without merit. We can see no reason to comment thereon. Accordingly, for the reasons expressed herein, we hold that the judgment appealed from be, and it is hereby, reversed and a new trial awarded.
Reversed.
HOBSON, C.J., concurs.
PIERCE, J., dissents with opinion.
PIERCE, Judge (dissenting).
I respectfully dissent.
I cannot see how any amatory dalliances between the widow Maxcy and investigator Trulock would tend to show "material bias or interest" toward or against the defendant Sweet. Nor do I see that the circumstance of a direct conflict between them as to whether such sordid behavior actually took place, even though it would necessarily affect the credibility of one or both of them, would render such testimony admissible, because it would be upon an immaterial matter to the issue being tried, which was whether Sweet killed Maxcy.
The law books are full of cases which support my views. As representative of the myriad of such cases, see the opinions of this 2nd District Court in Lockwood v. State, Fla.App. 1959, 107 So.2d 770 and Johnson v. State, Fla.App. 1965, 178 So.2d 724.
Rehearing denied.
HOBSON, C.J., and McNULTY, J., concur.
PIERCE, J., dissents.
PIERCE, Justice (dissenting).
I would grant the petition for rehearing and affirm the judgment on the merits, in accordance with my original dissent.
NOTES
[1] We observe here that it makes no difference as to appellant, in view of the prosecution's theory and the proof in this case, that the evidence herein is manifestly insufficient to convict Kelly and Von Etter of the actual homicide if they were on trial.
[2] (Fla.App.2d 1966), 185 So.2d 5.