270 So.2d 399 (1972)
Irene Maxcy WELLS, Appellant,
v.
The STATE of Florida, Appellee.
No. 71-1257.
District Court of Appeal of Florida, Third District.
December 5, 1972.
Rehearing Denied January 9, 1973.
*400 Frank Ragano, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., and Arnold R. Ginsberg, Asst. Atty. Gen., for appellee.
Before PEARSON, CHARLES CARROLL and HAVERFIELD, JJ.
PEARSON, Judge.
Irene Maxcy Wells was suspected of complicity in the murder of her husband, Charles Von Maxcy. The State of Florida granted her immunity from prosecution for the crime in return for her agreement to testify against John Sweet, a person to whom she stated she had paid the money for the murder. She testified at the first trial of John Sweet which resulted in a mistrial. She testified somewhat differently at Sweet's second trial. The second trial resulted in a conviction which was set aside on appeal. See Sweet v. State, Fla. App. 1970, 235 So.2d 40. The appellant was indicted and informed against for the crime of perjury. She was tried, convicted, and sentenced to life in prison. This appeal is from that judgment and sentence.
The facts which must be referred to in a discussion of appellant's points may be summarized as follows. On October 3, 1966, the husband of the appellant, Charles Von Maxcy, was killed. The State suspected that John Sweet had committed the crime. On May 7, 1967, the appellant gave a sworn statement to the state's attorney after she had been promised immunity. The appellant stated that John Sweet had arranged the murder of her husband by two individuals from Boston and that two or three weeks later, Harry Lee, an attorney from Sebring, Florida escorted her to a bank in Sebring where she cashed a check for $25,000. She stated that she was given the money in $100 bills and that she gave $20,000 to Harry Lee to give to John Sweet and that she put $5,000 in her safety-deposit box. At the time the bank gave the appellant the $25,000, the bank officials had made a record of the serial numbers *401 of the bills. This fact was first brought out at the second trial of John Sweet. Subsequent to the time that the $20,000 was turned over to John Sweet, he went to the same bank in Sebring and made a payment on a $700 loan that he had at the bank. The seven $100 bills that he used were shown to be a part of the $25,000 that the appellant had received from the bank. The State was able to show that the appellant had cashed the $25,000 check on November 10, 1966 and that November 10 was the date that she went into her safety-deposit box. The State was further able to show that the records at the bank demonstrated that she did not reenter the safety-deposit box until after the date when Mr. Sweet made the $700 payment to the bank.
At the second trial, Irene Maxcy's testimony differed from that given at the first trial in that she testified that she had given the $20,000 to Mr. Lee for delivery to Mr. Sweet but that before she closed her safety-deposit box, she took out an additional $1,000 of the money and later gave it to Mr. Sweet in repayment of a personal loan. The effect of this testimony was to provide a possible basis for Mr. Sweet's possession of $700 of the marked bills without receiving them because of the murder payoff. In addition, the appellant testified at the second trial that she was told by the state's investigator not to mention the $1,000 she allegedly paid upon the personal loan and for that reason she did not testify about it at the first trial. The effect of this testimony was to discredit the state's investigator whose testimony was an important and necessary link in the chain of evidence at the second trial of John Sweet.
A four count information was filed against the appellant charging her with perjury. After a motion for change of venue had been granted by the Criminal Court of Record of Polk County, Florida, the case was tried in the Criminal Court of Record of Dade County, Florida. At the conclusion of the State's case, the trial judge granted motions for judgment of acquittal as to counts one, three and four of the information. The appellant was found guilty upon count two. Count two alleged that the appellant was guilty of perjury in that she did:
* * * * * *
"... wilfully, knowingly, falsely, feloniously and corruptly swear in substance and effect as follows: `Well, I took $5,000.00  gave Harry Lee $20,000.00 and went to the bank and put $5,000.00 in there, and I got a thousand dollars out to give to Mr. Sweet that I owed and Mr. Trulock told me not to say anything about that at the other trial.'"
* * * * * *
On this appeal, the appellant has presented three points for reversal. They are as follows:
I
"Assuming arguendo that the alleged statement by the appellant was untrue, was it material to the issue in the John Sweet case?
II
"Did the court err in denying appellant's motion for judgment of acquittal?
III
"Did the court err in refusing to give appellant's requested charge number 6?"

CONSIDERATION OF POINT ONE
In her argument that the charged perjury was not material, the appellant relies heavily upon the fact that John Sweet's second trial resulted in a conviction in the trial court. The elements of the crime of perjury have been set out in the case of Gordon v. State, Fla. 1958, 104 So.2d 524, which quotes them from 3 Wharton's Criminal Law and Procedure § 1290, as follows: "`(1) the wilful (2) giving of false testimony (3) on a material point (4) in a judicial proceeding, (5) by a *402 person to whom a lawful oath had been administered.'" We are, of course, concerned here only with the third element which is the materiality of the testimony. The degree of materiality of the testimony is not of any importance, but rather the test is whether the alleged false statement is capable of influencing the court on the issue the court is considering. Shelton v. State, 157 Fla. 482, 26 So.2d 444 (1946). The testimony of the appellant at the second trial that she did not place $5,000 in the safety-deposit box, but actually put $5,000 in and then took out $1,000 so that she really placed $4,000 back in the box, was material to the issue of whether the $700 revealed to be in John Sweet's possession after the pay off was a part of the pay off money. The appellant's testimony was therefore material upon the issue of defendant Sweet's guilt.
The portion of the appellant's testimony included in count two in reference to the $1,000 which she took out of the safety-deposit box, and which states that "Mr. Trulock told me not to say anything about that at the other trial", was also material because Trulock's testimony was material to the issue of Sweet's guilt, and the effect of appellant's testimony that Trulock had attempted to falsify the evidence was material to the issue of witness Trulock's credibility. It is not important to this appeal that the jury did not believe appellant's testimony about placing $5,000 in the box and then taking out $1,000 which she allegedly gave to John Sweet. The testimony concerned a material issue and even though not believed, was sufficient to constitute perjury. The jury at Sweet's trial did not believe the appellant and did believe Trulock. This was their province. Whether the false testimony was believed or not does not deprive the testimony of its material character. See Fields v. State, 94 Fla. 490, 114 So. 317 (1927).

CONSIDERATION OF POINT TWO
Appellant's second point questions the sufficiency of the evidence to support the judgment of guilt. The basic argument under this point is that appellant's conviction cannot stand as to the portion of her statement concerning witness Trulock because the proof submitted by the State is simply the word of the appellant against the word of witness Trulock. In Yarbrough v. State, 79 Fla. 256, 83 So. 873 (1920), the Supreme Court of Florida in quoting from an earlier case, McClerkin v. State, 20 Fla. 879 (1884), set forth the rule as to the sufficiency of proof in order to convict for perjury:
"`To convict of the crime of perjury, the offense must be proved by the oaths of two witnesses, or by the oath of one witness, and by other independent and corroborating circumstances, which is deemed of equal weight with another witness. Such is the rule now, well established on authority.'"
The proof in the case now before us meets this test. The falsity of appellant's testimony in regard to the particulars recited in count two was proved by the testimony of one witness, Roma Trulock, and by other independent and corroborating circumstances which are of equal weight with another witness. The record reveals the following circumstances. First, appellant's testimony at John Sweet's first trial not only omitted the testimony which she later gave, but her testimony at the first trial was by its very nature contradictory to the testimony given at the second trial. At the first trial, appellant testified as to her visit to the bank and the placing of $5,000 in her safe-deposit box. This testimony would have been false if in truth she had merely placed the $5,000 in the box for an instant and then took out the $1,000. She did not claim a subsequent visit to the box in her perjured testimony, but in effect maintained that her first testimony was in its essence false because she only placed $5,000 in the box for an instant and then immediately took out $1,000. This contradiction in testimony of itself may not be sufficient for conviction but it certainly is a corroborating circumstance.
*403 Secondly, the record shows that appellant made a prior statement which contradicted her testimony at the second trial. It was established that when appellant had a conference with the state's attorney shortly prior to the second trial of John Sweet, she was asked why she did not mention the $1,000 at the prior trial and she replied at that time "Nobody ever asked me." This prior inconsistent statement was a corroborating circumstance tending to prove the falsity of appellant's statement at the second trial that witness Trulock had told her not to mention it.
The record establishes a third corroborating circumstance as a result of the fact that the appellant's sister, who was on the scene when the appellant was interviewed by witness Trulock, testified that she heard the appellant say that she put the $5,000 in the box, but heard no conversation about $1,000 being withheld.
The circumstances recited demonstrate a pattern of deception initiated after the first trial of John Sweet, and taken together they are sufficient to meet the quantum of proof required for perjury.

CONSIDERATION OF POINT THREE
Appellant's third point claims error because the trial court refused to instruct the jury by giving the defendant's requested charge. In fact, the requested charge was not proper because it amounted to an instruction to find the defendant not guilty unless her alleged perjured testimony was proved to be false by the sworn statements of two witnesses. As we have seen, this is not a correct statement of the law inasmuch as it is established in Florida that a conviction of perjury may be entered if one witness testifies and there are sufficient corroborating circumstances to equal the weight of a second witness. See Yarbrough v. State, supra. See also Ward v. State, 83 Fla. 311, 91 So. 189 (1922). Since the instruction presented to the trial court was an incorrect statement of the law it was not error to refuse the instruction. See Gordon v. State, Fla.App. 1960, 119 So.2d 753.
Our examination of the entire charge given by the court shows that it would not have been error to refuse the requested instruction even if it had correctly stated the applicable law because the subject was fully covered in the general charges given by the court. Mackiewicz v. State, Fla. 1959, 114 So.2d 684; Yost v. State, Fla.App. 1971, 243 So.2d 469; Pabst v. State, Fla.App. 1964, 169 So.2d 329; Kraft v. State, Fla.App. 1962, 143 So.2d 863.
Since we have examined the record in the light of each point presented by the appellant and find that no reversible error has been shown, the judgment and sentence are affirmed.
Affirmed.