473 So.2d 1370 (1985)
Carl Michael PITTS, Appellant,
v.
STATE of Florida, Appellee.
No. AY-352.
District Court of Appeal of Florida, First District.
August 12, 1985.
*1371 William N. Avera of Avera, Bernstein & Perry, Gainesville, for appellant.
Jim Smith, Atty. Gen., and John Koenig, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
PEARSON, TILLMAN (Ret.), Associate Judge.
The appellant, Carl Michael Pitts, was found guilty, by a jury, of vehicular homicide as proscribed by Section 782.071, Florida Statutes (1981).[1] This court is asked to review the trial judge's order withholding adjudication of guilt and placing the defendant on probation. We reverse and remand for a new trial, finding that prejudicial error appears in the introduction of evidence.
On August 18, 1983, the appellant was a deputy sheriff with the Alachua County Sheriff's Office. Just before 1:00 a.m., Pitts received a request for a "backup" from a lone officer on the scene of a possible burglary in progress. Pitts advised communications at the Sheriff's Office that he was responding to the call but failed to inform communications that he was running "code one", an emergency code, with blue lights and siren on. The officer requesting backup later testified that such a situation is viewed as potentially lethal for an officer on the scene. Pitts testified that he was concerned for the security of the lone deputy.
*1372 While responding code one, Pitts came upon a vehicle moving in the same direction as his patrol car; the vehicle yielded to let the deputy pass. Occupants of that car testified that the Pitts' vehicle was traveling at approximately 50 miles per hour. As Pitts approached the vicinity of the crime, he turned off his siren because he had been taught in the police academy to respond silently when approaching an area of a burglary in progress.
While proceeding in a westerly direction with blue lights flashing and siren off, Pitts came upon a second westbound vehicle moving at approximately 40 to 50 miles per hour. Pitts testified that he attempted to get the car to yield by alternately flashing his bright and dim lights and blowing his horn. Pitts testified that when the vehicle did not yield, he checked to make sure the oncoming lane was clear and pulled around to pass. Occupants of that vehicle apparently continued to occupy the westbound lane without yielding. As Pitts pulled to a position ahead of the vehicle he was passing, decedent's oncoming car rounded the curve ahead. Trooper Daniel Campbell, an accident reconstructionist presented by the State, testified that, although the driver of the vehicle being passed by Pitts was in a position to see decedent's oncoming vehicle before Pitts did, Pitts reacted and applied his brakes before the driver of the vehicle being passed reacted. Pitts unsuccessfully tried to avoid the collision by driving into the guardrail. As a result of the collision the driver of the oncoming vehicle was killed.
The highway curved just beyond the point of collision. Trooper Campbell indicated that, for a driver approaching the curve from Pitts' direction, the road ahead has the appearance of being straight because of two roads coming together at a 35-degree angle. There is evidence that Pitts attempted the pass maneuver in a no-passing zone with a speed limit of 50 miles per hour and that the patrol car had poor acceleration. State and defense expert witnesses dispute the rate of speed at which Pitts was traveling. The State estimates the prebraking speed for Pitts to be approximately 75 to 80 miles per hour, while the defense calculates that speed at 58.5 miles per hour. Pitts testified that he was traveling between 55 to 60 miles per hour. The State disputed Pitts' testimony that he was never able to get far enough in front of the westbound vehicle to complete the pass.
Appellant's first point claims error upon the denial of the motion for judgment of acquittal made at the close of the State's case and renewed at the close of all the evidence. The dividing line between the lack of care required for proof of vehicular homicide by reckless operation of a motor vehicle in a manner likely to cause death or great bodily harm and careless driving, a noncriminal traffic offense, is obviously hard to draw. In this case, we hold that the assessment of the defendant's actions was properly left to the jury. See Tillman v. State, 353 So.2d 948 (Fla. 1st DCA 1978); Lynch v. State, 293 So.2d 44 (Fla. 1974); Amato v. State, 296 So.2d 609 (Fla. 3d DCA 1974).
In this connection, we are not unmindful of the rule that a police officer should take such steps as may be necessary to apprehend an offender but, in doing so, should not exceed proper and rational bounds or act in a negligent, careless, or wanton manner. City of Miami v. Horne, 198 So.2d 10 (Fla. 1967).
The second point urges error upon the denial of an instruction on careless driving.[2] The theory of defense *1373 presented was that Pitts may have been negligent or even careless but that this conduct did not meet the standard of recklessness required for conviction of vehicular homicide. The rejected jury instruction asked the court to instruct the jury on the law concerning careless driving and its relationship to reckless driving. Pitts argues that refusal to give the requested instruction is reversible error because the jury was not apprised of any legal basis upon which it could consider his theory of defense. Bryant v. State, 412 So.2d 347 (Fla. 1982); Motley v. State, 155 Fla. 545, 20 So.2d 798 (1945). As noted above, careless driving is not a lesser-included offense of vehicular homicide. The instructions given fully covered the issue of reckless driving. The giving of the requested instruction would not have served to clarify the issue and may have been confusing to the jury. We cannot agree with appellant that the instruction was necessary for the presentation of his theory of the case. No error has been shown on the instruction. Cruz v. State, 310 So.2d 360 (Fla. 3d DCA 1975); Wells v. State, 270 So.2d 399 (Fla. 3d DCA 1972).
It is argued in the third point that the court erred in allowing an expert witness as a rebuttal witness. Whether the testimony of a particular witness is cumulative or proper, rebuttal is an area where the trial court must have broad discretion, and, in the absence of clear and harmful error, the ruling will be affirmed. See Britton v. State, 414 So.2d 638 (Fla. 5th DCA 1982). No abuse of discretion appears on the record.
The fourth point concerns the admission over objection of evidence, which we hold to have been prejudicial error. The State called as a witness a captain with the Alachua County Sheriff's Office and, through his testimony, secured introduction into evidence of excerpts from a departmental manual of the Alachua County Sheriff's Office. The objectionable section of the manual, which was read into evidence, provided that an officer who made a decision to proceed under "code one" should advise communications of his decision. It will be recalled that Deputy Pitts only informed communications that he was responding to the emergency call.
The State Attorney, again over objection, cross-examined Pitts as to whether he was in violation of the departmental manual. The State then argued, in closing argument, that the deputy's violation of the office manual was evidence to be considered in determining whether or not Pitts had acted recklessly. The court instructed the jury as follows:
The failure of the deputy sheriff to follow the rules set out in the rules manual of the Sheriff's Office is not proof of recklessness in and of itself, however, if you find the defendant failed to follow the rules of the department and that this failure caused or contributed to the cause of the death of the deceased ... you may consider this circumstance together with the other circumstances in the evidence considering whether the vehicle of the defendant was operated in a reckless manner.
In other words, the violation of communications procedure became a feature of the case as opposed to the actual operation of the motor vehicle on the night in question.
No evidence was presented as to who promulgated the manual or for what purpose it was promulgated except the following excerpt from the preface:
The contents are designed to assist in functions of the office and to assist in standardizing policies and procedures. This manual is for internal use only, and does not enlarge an officer's civil or criminal liability in any way.
The policy that a deputy should report to communications that the deputy is proceeding in "code one" seems to be designed to keep the communicator informed of the location of all deputies. It may also be helpful to communications in coordinating the dispatch of backup personnel. No evidence was presented on these points. The jury was left to guess as to the relationship of the violation to the culpability of the defendant. The State suggests that, if the deputy was so forgetful of the proper procedure, he might also be reckless. We fail *1374 to see the probative value of the manual, both because it introduced a false standard in the measure of reckless driving and because the force and effect of the manual was not shown.
There are civil negligence cases which permit the introduction of policy manuals as evidence of customary care.[3] The rule regarding the admissibility of evidence of custom in civil cases to prove negligence is not applicable in a criminal case. In a civil case, there is often no statute regulating the specific kind of conduct that is before the court. In that case, the jury needs some standard by which to judge the alleged negligence. Evidence of ordinary practice or general custom is then introduced as a standard by which the conduct under scrutiny can be compared. In a criminal case, there is no such need. The question is whether the defendant has violated a statute. As a citizen, Pitts was entitled to be judged by the state statute, not a standard promulgated by some unknown person in the Sheriff's Office. If Pitts operated his motor vehicle in violation of a manual rule but not in a reckless manner, he could not be convicted of vehicular homicide.
In City of St. Petersburg v. Reed, 330 So.2d 256 (Fla. 2d DCA 1976), the court had before it a case where the civil liability of a city for the alleged assault and battery of a citizen by a police officer was being tested. The court held (330 So.2d at 258):
We agree with the Fourth District that in this suit for assault and battery, state-wide standards for the use of deadly force must be controlling. Accordingly, introduction into evidence of the safety order was error.
In the Fourth District case referred to, Chastain v. Civil Service Board of Orlando, 327 So.2d 230 (Fla. 4th DCA 1976), the court, in an appeal involving the dismissal of a police officer, held that a police department regulation could be considered but pointed out (327 So.2d at 232):
We therefore hold that a police department may lawfully impose upon its police officers a regulation concerning the use of deadly force which is more stringent than the law imposes upon police officers for criminal and civil liability, and while such regulation would not affect the standard by which the officer's criminal or civil liability is measured, the violation of such regulation would properly subject the offending member to appropriate disciplinary action within the department. [emphasis added]
Accordingly, the judgment is reversed. The defendant may be retried if the State Attorney finds the admissible evidence sufficient.
Reversed and remanded.
NIMMONS, J., specially concurs with written opinion, with which SHIVERS, J., concurs.
NIMMONS, Judge, concurring specially.
I concur except for the confusing last sentence of the court's opinion, "The defendant may be retried if the State Attorney finds the admissible evidence sufficient." (e.s.) I would simply remand for a new trial.
NOTES
[1] Section 782.071, Florida Statutes: "`Vehicular homicide' is the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another... ."
[2] Defendant's Special Requested Jury Instruction No. 2:

Evidence that an individual operated a motor vehicle in a careless or imprudent manner so as to endanger the life, limb, or property of any person, taking into consideration all the attendant circumstances including but not limited to, the width of the road, the grade of the road, curves, corners and traffic conditions, is sufficient to prove the offense of careless driving.
Evidence that an individual operated his motor vehicle in a careless manner is not in and of itself sufficient to establish that he is guilty of reckless driving, but is a circumstance which, if proved, may be considered by you as jurors in the light of all other evidence in the case in determining guilt or innocence.
[3] Sea Board Air Line Ry. Co. v. Watson, 94 Fla. 571, 113 So. 716, 718 (Fla. 1927).