503 So.2d 929 (1987)
Diartis MILLER, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-669.
District Court of Appeal of Florida, Third District.
February 17, 1987.
Rehearing Denied April 1, 1987.
Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen. and Richard L. Polin, Asst. Atty. Gen. and Donald Loughran, Certified Legal Intern, for appellee.
Before BARKDULL, NESBITT and FERGUSON, JJ.
BARKDULL, Judge.
The appellant, along with Alfred Kirkland and James Harrison attempted to burglarize a Pantry Pride store. Appellant had been employed at the store as a bag boy and stock clerk at the time. His role in *930 the burglary was to supply Kirkland with the combination to the safe and the key to the back door for Kirkland's exit. Kirkland was to hide in the store until closing and then open the safe. Harrison was to be the lookout. They met about three times before the burglary to review the plans. The day of the burglary, appellant worked from 6:00 p.m. to 12:00 midnight. While working, he was informed by the store manager that the porter would be remaining in the store overnight to clean up. Kirkland arrived at the store at about 11:30 p.m. and appellant informed him that someone would be in the store that night. This had not been expected. It was either appellant or Kirkland who decided to knock out, but not kill the porter. Appellant left the store at around midnight and stood outside with Harrison. They observed that Kirkland could not open the safe and appellant yelled to him to try the key and then finally yelled to him to "forget it." He and Harrison then walked towards the rear of the store from where Kirkland would be exiting and they saw a man going towards the phone. They then heard the store alarm go off and they all fled. When the police arrived, they found the store's front door was smashed, bloody sneaker prints near the safe and the porter, who had been murdered. There was a blood-covered fire extinguisher lying beside the porter, which apparently had been used to kill him. The cause of death was determined to be multiple blunt trauma injuries to the head. Near the safe they found a piece of paper with numbers on it. Fingerprints were lifted from the paper, fire extinguisher and floor tile. Kirkland's fingerprints were found to be on all three. Fingerprints of all the store employees were also taken. Appellant was taken in for questioning at which time he confessed to the crime. In his statement, appellant states he repeatedly told Kirkland that they should not go forward with the plans because the porter was in the store. However, he finally gave Kirkland the paper with the combination on it. Harrison was also questioned and later entered a guilty plea to a second-degree murder charge and testified against appellant. Appellant was charged with first-degree murder, burglary of an occupied structure and attempted robbery. During the charge conference, appellant requested an instruction on withdrawal from the offense as a defense but the court denied the request. The jury found appellant guilty on all counts and he was sentenced to life with a twenty-five year minimum-mandatory on the murder count and concurrent seventeen year terms on the other counts. Appellant filed a motion for a new trial on the ground the court erroneously refused to give his requested jury instruction. The motion was denied and this appeal ensued.
The appellant urges that the trial court committed reversible error in denying his requested jury instruction on the defense of withdrawal. He made one self-serving statement in a police confession and relies on this to prove his innocence of the crime based on withdrawal. However, after the statement was allegedly made to the accomplice, the appellant's acts belied withdrawal. He supplied the accomplice with the combination to the safe; he left the store knowing the accomplice was hiding in the store in a place where he would not be found; he knew the accomplice planned to knock the porter out; and he attempted to assist the accomplice, who was covered with blood, from outside the store. Under such circumstances, the evidence did not support his request for an instruction on "withdrawal".
The standard for the defense of withdrawal in both premeditated and felony murder prosecutions was established by the Florida Supreme Court in Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983), when the Court stated:
"To establish the common-law defense of withdrawal from the crime of premeditated murder, a defendant must show that he abandoned and renounced his intention to kill the victim and that he clearly communicated his renunciation to his accomplices in sufficient time for them to consider abandoning the criminal plan. For a defendant whose liability is predicated upon the felony murder theory, the required showing is the same and the defense is available even after the underlying felony or felonies have been completed. Again the defendant would have *931 to show renunciation of the impending murder and communication of his renunciation to his co-felons in sufficient time to allow them to consider refraining from the homicide.
In Smith the defendant was convicted of robbery, kidnapping, sexual battery, and first-degree murder. The defendant and two accomplices went to a convenience store, robbed it and abducted the female store clerk. They took her to a motel room where all three men committed sexual battery upon her. Afterwards they took her to a wooded area. An accomplice testified at trial that he waited in the car while the defendant and the other accomplice walked the victim into the woods. Then he heard three gunshots, after which the defendant and Copeland returned to the car without the victim. Her body was found two days later with three bullets in the back of her head. The appellant in Smith argued for reversal of his conviction because the court refused his requested jury instruction on the defense of withdrawal. He asserted that the evidence to support this defense was found in his confession to the police in which he admitted participating in the robbery and kidnapping but maintained that he tried to talk his accomplice, Copeland, out of killing the victim. The testimony of accomplice Hall, was that Copeland and the defendant both agreed to the killing. Hall's testimony made no mention of any communication of withdrawal by defendant during the automobile trip from the motel to the murder scene. The Court in Smith rejected the defendant's argument when it stated:
"Appellant correctly points out that a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions... . The trial judge should not weigh the evidence for the purpose of determining whether the instruction is appropriate. Appellant's pretrial statement, however, testified to by a state witness, seems hardly sufficient to raise the issue of withdrawal in view of the above-discussed facts. Without formulating any general harmless error rule regarding improper denial of instructions on defenses, we hold that here the error, if any, was harmless. No new trial is required.
The facts and underlying rationale of the Smith case are applicable to this case. The appellant met with Alfred Kirkland three times in a two to three week period to plan the robbery. On the fateful night when the appellant knew the porter was going to spend the night in the store he claims he told Kirkland he did not want to go through with the plan. He relies on his confession to the police as evidence of his withdrawal defense. The Smith holding stands for the proposition that when a defendant makes a self-serving statement in a police confession to prove his innocence of a crime based on withdrawal, but there is an overwhelming preponderance of evidence which contradicts that statement, an appellate court will not find reversible error in the denial of an instruction on the withdrawal defense. The actions of a defendant may speak louder than his words. It is clear from the appellant's actions that he had no intention of abandoning his plan to rob the Pantry Pride store. He claims that he told Kirkland he did not want to continue with the plan, yet he gave Kirkland a very clear message that he was going to continue when he provided Kirkland with the combination to the safe. He reinforced his approval of moving forward with the robbery when he did not protest to Kirkland's plan to knock out the porter. From the time Alfred Kirkland entered the store at 11:30 p.m., until the appellant's check-out time of midnight, he had ample time to withdraw. He could have let the store security guard know that a normal inspection of the store would be inadequate that night. He could have alerted the police or management of a potential robbery, instead he chose to go on with his normal duties and leave as scheduled. These actions provided his accomplice with tacit approval and the inference that the hiding place the appellant had suggested would be successful. The appellant's testimony that he stayed outside the store after closing to wait for Kirkland, knowing full well what his accomplice had in mind, betrays the words of his confession. When Alfred Kirkland came to open the safe he had *932 already killed the porter. This is clear from the blood on the fire extinguisher, the blood on the piece of paper with the combination on it, the bloody sneaker print in front of the safe, and the fact that Kirkland was covered with blood when he attempted to open the safe. According to James Harrison, the appellant saw the blood-stained Kirkland working on opening the safe. The appellant attempted to assist Kirkland by yelling instructions to him and finally, out of frustration, he told Kirkland to "forget it". In addition, James Harrison testified that the appellant never told him he did not want to rob the Pantry Pride, nor did he mention to Harrison that he ever tried to talk Kirkland out of carrying out the plan.
Diartis Miller remained an active participant in the robbery of the Pantry Pride store after he allegedly told Alfred Kirkland he wanted to discontinue the plan. Even if his self-serving statement is taken at face value, his own testimony reveals that subsequent to the self-serving statement he engaged in acts which were part of the criminal offense. Under such circumstances, the evidence did not support his request for an instruction on withdrawal. Therefore, the convictions under review are hereby affirmed.
Affirmed.