584 So.2d 19 (1991)
William LOZANO, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-217.
District Court of Appeal of Florida, Third District.
June 25, 1991.
Rehearing Denied September 11, 1991.
*20 Black & Furci, and Roy E. Black, and Marisa T. Mendez, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Shiffrin, Sp. Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and JORGENSON and GERSTEN, JJ.
PER CURIAM.
Appellant, William Lozano (Lozano), appeals his convictions and sentences on two counts of manslaughter. We reverse for a new trial.

FACTS
Lozano was employed as a City of Miami police officer. On the day of the incident giving rise to the convictions, and unknown to Lozano, Clement Lloyd (Lloyd) and Allan Blanchard (Blanchard), two males riding a motorcycle, were committing a traffic infraction some distance away. Another police unit attempted to stop the motorcycle to issue a citation, but it sped away and a chase ensued.
The police unit followed the motorcycle as it travelled in the direction of Lozano. As the chase neared Lozano's location, Lozano and his partner could hear the siren of an approaching police vehicle, and could even see the flashing emergency lights.
*21 As the vehicles approached, Lozano stepped into the street on which the vehicles travelled. Within seconds, the driver and passenger of the motorcycle lay dead: Lloyd, the driver, shot by Lozano; Blanchard, the passenger, dead from the resultant crash.
Within minutes, the neighborhood erupted into civil disturbances. Normal police procedures could not be followed. The scene of the shooting was not preserved, and vital physical evidence was lost.
The riots were extensively reported by the media. The media coverage was further increased by the presence of national and international reporters in Miami to cover the Super Bowl. The Miami riots became world news.
Because of the extensive media coverage and the facts that violence had followed both the incident itself and prior acquittals in similar so-called police brutality cases, Lozano sought a change of venue. In support of his motion for that relief, he provided the court with more than 375 affidavits, 500 newspaper articles, as well as with other supporting exhibits.
Lozano also sought a hearing on the motion, in order to present live testimony regarding the widespread concern over the prospect of unrest in the area if there were verdicts of not guilty. The trial court denied the motion for a change of venue, and it denied Lozano a full-scale hearing on the motion. The case proceeded to trial.
During pretrial motions, the State sought to exclude evidence of past criminal acts by Lloyd, and drug use and drug possession by Blanchard. The trial court granted the State's motion, and precluded the defense from presenting any collateral crimes evidence relating to the victims.
Lozano sought to exclude from the trial evidence, testimony regarding police departmental policies on the use of deadly force. This testimony tended to show that Lozano violated the police department's policy prohibiting shooting at a moving vehicle. The trial court denied Lozano's motion in limine and permitted the State to present evidence of police policy, rules, and regulations.
Because this evidence was admitted, Lozano sought a jury instruction which would include a special instruction on the justifiable use of force by a police officer. The trial court denied the specially requested jury instruction. Instead, the trial court gave the standard jury instructions pertaining to the use of force by law enforcement officers, and to self-defense.

I.

SUFFICIENCY OF EVIDENCE
We hold that the evidence was amply sufficient to support the verdicts, and therefore reject Lozano's contention that he is entitled to an acquittal as a matter of law. However, we find that errors committed by the lower court require that a new trial be conducted.

II.

CHANGE OF VENUE
Appellant contends that the failure to grant the motion for a change of venue, and the denial of a hearing on the motion, constitute an abuse of discretion. Appellant argues that such abuse deprived him of a fair trial.[1]
The courts of this State have steadfastly held to two major principles: (1) that the application for a change of venue is addressed to the sound discretion of the trial court;[2] and, (2) that in determining a motion for a change of venue, of utmost consideration *22 is whether the defendant can obtain a fair and impartial trial.[3] In addressing these two considerations, the Florida Supreme Court stated:
[A] determination must be made as to whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.
Manning v. State, 378 So.2d at 276 (citing McCaskill v. State, 344 So.2d 1276 (Fla. 1977)).
In determining the necessity for a change of venue, the court:
Must liberally resolve in favor of the defendant any doubt as to the ability of the State to furnish a defendant a trial by fair and impartial jury.
Singer v. State, 109 So.2d at 14.
Where the evidence presented reflects prejudice, bias, and preconceived opinions, the trial court is bound to grant the motion. Manning v. State, 378 So.2d at 276.
The State correctly sets forth the test for judging a claim of prejudice in a denial for a change of venue:
[T]he defendant has the burden of coming forward and showing that the setting of the trial is inherently prejudicial because of the general atmosphere and the state of mind of the inhabitants of the community.
Manning v. State, 378 So.2d at 276; see Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).
This case also invokes the doctrine, founded upon the Sixth Amendment right to an impartial jury, that every criminal defendant is entitled to a trial free of prejudice inherent in the circumstances which present an "unacceptable risk ... of impermissible factors coming into play." Estelle v. Williams, 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, 131 (1976); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, rehearing denied, 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Woods v. Dugger, 923 F.2d 1454 (11th Cir.1991); Norris v. Risley, 918 F.2d 828 (9th Cir.1990).
Applying these principles, we must conclude that even the limited, yet uncontroverted, evidence presented by Lozano required a holding that the case could not then be fairly tried in Dade County.[4] We simply cannot approve the result of a trial conducted, as was this one, in an atmosphere in which the entire community  including the jury[5]  was so obviously, and, it must be said, so justifiably concerned with the dangers which would follow an acquittal, but which would be and were obviated if, as actually occurred, the defendant was convicted. Surely, the fear that one's own county would respond to a not *23 guilty verdict by erupting into violence is as highly "impermissible [a] factor," Estelle v. Williams, 425 U.S. at 505, 96 S.Ct. at 1693, as can be contemplated. Surely too, there was an overwhelmingly "unacceptable risk," Turner v. Louisiana, 379 U.S. 466, 473, 85 S.Ct. 546, 550, 13 L.Ed.2d 424, 429 (1965), of its having adversely affected Lozano's  and every citizen's  most basic right under our system: the one to a fair determination of his guilt or innocence based on the evidence alone. The trial court's failure to grant the motion for a change of venue, therefore, mandates reversal for a new trial.[6]
Although we find that the circumstances at the time of trial were such that the trial court erred in not granting a change of venue at that point, we do not mandate a transfer of venue after remand. Instead, that question will be resolved below, after hearing, on the basis of the conditions existing at the time of any such motion.

III.

CLAIMS OF TRIAL ERROR
Addressing the issues likely to arise in the new trial required by this opinion, we hold:
1. State's Motion in Limine  The State's motion in limine sought to exclude the introduction of evidence regarding Lloyd's previous drug arrests, and Blanchard's drug possession and use. The trial court granted the motion as far as Blanchard's possession of marijuana, and Lloyd's arrests. The trial court did not, however, limit evidence about Lloyd's use and possession of drugs.
A defendant who asserts that he acted in self-defense, must lay a proper foundation before presenting evidence of the victim's character. E.B. v. State, 531 So.2d 1053 (Fla. 3d DCA 1988). The victim's character becomes relevant to resolve an issue as to the reasonableness of the defendant's fear at the time of the incident. E.B. v. State, 531 So.2d at 1054.
Evidence of a deceased's violent character is admissible if an issue exists as to whether the victim was the first aggressor, or the reasonableness of the defendant's belief concerning imminent danger from the deceased. Burk v. State, 497 So.2d 731 (Fla. 2d DCA 1986).
Evidence regarding prior arrests and bad acts of a victim is also admissible to show a reasonable apprehension of harm on the part of the defendant. Taylor v. State, 513 So.2d 1371 (Fla. 2d DCA 1987). However, evidence of prior arrests and bad acts is not admissible where, as here, a defendant has no knowledge of the matters sought to be introduced. See Mozqueda v. State, 541 So.2d 777 (Fla. 3d DCA 1989); Taylor v. State, 513 So.2d at 1372; see also Sanchez v. State, 445 So.2d 1 (Fla. 3d DCA 1984).
We find no error because we find no relevance between Blanchard's possession of marijuana and Lozano's apprehension or compulsion to act in self-defense. We also find that Lloyd's prior arrests and convictions, and evidence relating thereto, absent record evidence that Lozano had knowledge of those matters, are not relevant to either Lozano's theory of self-defense or Lozano's attempted arrest of Lloyd.[7]
*24 2. Defense Motion in Limine  Prior to trial, Lozano sought to exclude, through a motion in limine, all reference to City of Miami Police Department policy, procedures, and training regarding the use of deadly force. These regulations and policy impose upon a City of Miami police officer a duty to seek a place of safety and to retreat from danger. The police procedures further proscribe the use of a firearm against a moving vehicle.
The trial court denied Lozano's motion in limine, and admitted evidence and testimony regarding police policy, procedures, rules, and training. Lozano sought curative instructions, which the trial court denied.
We find error in the admission of the police manuals. Although introduction of police manuals is permitted in civil negligence cases, the rule regarding the admissibility of custom in civil cases is not applicable in a criminal case. Pitts v. State, 473 So.2d 1370 (Fla. 1st DCA 1985), rev. denied, 484 So.2d 10 (Fla. 1986).[8]See also City of St. Petersburg v. Reed,[9] 330 So.2d 256 (Fla. 2d DCA), cert. denied, 341 So.2d 292 (Fla. 1976); Chastain v. Civil Service Board of Orlando, 327 So.2d 230 (Fla. 4th DCA 1976).[10]
3. Jury Instructions  Lozano contends that the trial court erred in failing to specially instruct the jury on the justifiable use of force by a police officer. See § 776.05, Fla. Stat. (1989).
Standard jury instructions in criminal cases are: (1) intended to assist the trial court in charging the jury on the applicable law; (2) intended only as a guide; and (3) not intended to relieve the trial court of its responsibility to charge the jury correctly in each case. Steele v. State, 561 So.2d 638 (Fla. 1st DCA 1990); see also Miller v. State, 503 So.2d 929 (Fla. 3d DCA 1987).
Lozano's theory of defense encompasses both self-defense and the justifiable use of force by a police officer. Lozano's theory also included the element of an attempted arrest.[11]
Lozano's request for an instruction which included an officer's right not to retreat in executing an arrest without a warrant, is analogous to the jury instruction requested in Hedges v. State, 172 So.2d 824 (Fla. 1965).[12]
Whether Lozano was in fact effecting an arrest is an issue of fact for the jury. If Lozano was attempting a lawful arrest, he had no duty to retreat. See, e.g., § 776.05, *25 Fla. Stat. (1989). The given instruction, although factually correct, was incomplete in that it failed to address Lozano's theory that at the time of the shooting, he was a police officer attempting to effect a lawful arrest. Because a proper jury instruction in a criminal case is a fundamental right, Rojas v. State, 552 So.2d 914 (Fla. 1989), we find reversible error on this basis as well.

CONCLUSION
Although other issues were raised on appeal, we do not address them, either because they are not subject to repetition on remand, or because we found them to be without merit. Based on the foregoing, we reverse and remand for a new trial and proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] In Patterson v. State, 157 Fla. 304, 25 So.2d 713 (1946), the Florida Supreme Court addressed the denial of such a motion based on pretrial publicity, finding it the duty of the "trial court to hear the application and either grant or refuse the same after considering the facts set forth therein and the affidavits accompanying it and any other affidavits or counter affidavits that may be filed and after hearing any witness produced by either side." [Emphasis added.]
[2] Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); Patterson v. State, 25 So.2d at 713; Manning v. State, 378 So.2d 274 (Fla. 1979); Davis v. State, 461 So.2d 67 (Fla. 1984); Singer v. State, 109 So.2d 7 (Fla. 1959).
[3] See, e.g., Singer v. State, 109 So.2d at 14.
[4] Moreover, we also note that the trial court erred in denying Lozano an opportunity to present witnesses at a full and complete hearing in support of his motion for a change of venue. A trial court cannot, on the one hand, rule that a defendant has failed to meet his burden, while, on the other hand, deny that defendant the opportunity to present sufficient evidence to meet that burden.
[5] The record shows that five of the six actual jurors were directly affected by the pretrial publicity and fears of violence. Juror Gonzalez stated that she had heard from her friends that there was going to be a riot if Lozano were found not guilty and stated that she could not "honestly say" she could put this aside. Juror Quigly stated that her daughter worked within one block of where the riots had occurred and was worried and nervous about her daughter being affected by the riot. Juror Grumbach stated that he would feel "some pressure" sitting on the case, that it would be uncomfortable, and that there might be a disturbance if Lozano were found not guilty. Juror Johnson stated that there might be a riot as a result of the verdict and she would become concerned if a riot affected her or her family. Juror Simmons stated that he would be concerned about the reaction to the verdict in the case, and that he lived in a neighborhood that was directly affected by the past riots.
[6] Our disposition of this issue makes it unnecessary for us directly to address or determine the validity of either of Lozano's very substantial claims of error in the jury selection process: (a) that the court erroneously disallowed a peremptory challenge to a particular prospective juror, but see Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); and (b) that having done so, it prejudicially erred in seating the challenged juror, rather than dismissing the jury pool and beginning voir dire again with a new venire, as required by the present state of the law of Florida. State v. Neil, 457 So.2d 481 (Fla. 1984); Mazaheritehrani v. Brooks, 573 So.2d 925 (Fla. 4th DCA 1990); Carter v. State, 550 So.2d 1130 (Fla. 3d DCA), rev. denied, 553 So.2d 1164 (Fla. 1989).
[7] We note, however, that the State opened the door to the otherwise excludable evidence when, in its rebuttal, the State twice asserted that Blanchard had committed no crime. Nevertheless, the trial court denied Lozano's motions to instruct the jury regarding the crimes committed by Blanchard, or in the alternative for a mistrial. Instead, the trial court gave the jury a curative instruction. Although the prosecutor's comments were improper and opened the door to the otherwise inadmissible evidence, we do not reach the issue of whether they merit a reversal because we have already ruled that Lozano's convictions are to be reversed and the cause remanded on other grounds.
[8] In Pitts v. State, 473 So.2d at 1373-1374, a police officer's conviction for vehicular homicide was reversed, based on the admission of police policy manuals as evidence that he had operated his police vehicle in a reckless manner. The manuals were found to introduce "a false standard in the measure of reckless driving [,] ... the force and effect of the manual was not shown ..." and therefore, the manuals lacked any probative value.
[9] "[S]tatewide standards for the use of deadly force must be controlling. Accordingly, introduction into evidence of the safety order was error." Reed, 330 So.2d at 258.
[10] "[A] police department may lawfully impose upon its police officers a regulation concerning the use of deadly force which is more stringent than the law imposes upon police officers for criminal or civil liability, and while such regulation would not affect the standard by which the officers' criminal or civil liability is measured, the violation of such regulation would properly subject the offending member to appropriate disciplinary action within the department." Chastain, 327 So.2d at 232.
[11] Although the facts upon which Lozano bases his theory are in dispute, it is not the role of the trial judge to weigh the evidence for the purpose of determining whether the requested instructions are appropriate. Miller v. State, 503 So.2d at 931.
[12] In Hedges v. State, the issue was the "rule of non duty to retreat after an assault in one's own home." In Hedges, as in this case, "[t]he instruction correctly stated the law as far as it went but again it was not complete. The quoted language placed upon the accused the duty to use all reasonable means consistent with [his] own safety to avoid the danger and avert the necessity of taking human life. To the lay mind this well could be construed to mean a duty to run or to get out of the way." Hedges v. State, 172 So.2d at 826-827.