971 So.2d 963 (2008)
Steven WILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2080.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
*964 Carey Haughwout, Public Defender, and Elisabeth Porter, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
The charges against Wilson stemmed from an altercation between him and two other youths named Nicholas and Christopher. Wilson was standing outside of his house with his brother when the other youths drove by. From the passing car, Christopher yelled the word "faggot" at Wilson.
The other youths stopped near a stop sign just down the street from Wilson's house and emerged from their car. Wilson retrieved a fishing gaff, a long pole with a hook at the end, from a boat in his yard. Wilson and the other two youths approached each other. One of the other youths carried a table leg taken from the trunk of his car. Wilson carried the gaff. A fight ensued. The fight broke up. Police arrived. Nicholas was injured and his car was damaged.
Wilson was charged with aggravated battery of Nicholas and criminal mischief. His defense was that the other two youths tried to run him over as they drove by his house, that the youths armed with a table leg first approached him forcing him to defend himself. He asserted that he was acting in self-defense when he struck Nicholas with the gaff. The State's theory was that the other youths did not try to run Wilson over as they drove by, and that they emerged from their car only after they saw Wilson coming towards them with the fishing gaff.
Before trial the State sought to exclude any reference at trial about prior confrontations between Wilson and the other youths. Wilson argued that his attempted justification of self-defense stemmed precisely from earlier conflicts between Wilson *965 and the youths. More specifically, he proffered testimony regarding three prior incidents: (1) six months earlier, there was a verbal altercation between Wilson and the youths; (2) three months after that, they tried to entice Wilson into a fight, using a highly provocative racial epithet; and (3) they had driven past Wilson's house every day for the entire six months leading up to the incident in question. Nevertheless the trial court granted the State's request and excluded Wilson's proposed evidence, allowing him to renew the issue at trial. Wilson was convicted by the jury, who did not hear his evidence of the history between him and the youths. We reverse for a new trial.
A person may use deadly force in self defense when one reasonably believes that deadly force is necessary to prevent great bodily harm. See § 776.012, Fla. Stat. (2004);[1]Berrios v. State, 781 So.2d 455 (Fla. 4th DCA 2001); Weiand v. State, 732 So.2d 1044, 1049 (Fla.1999). But even under those circumstances, one may not resort to deadly force without first using every reasonable means available to avoid the danger, including retreat. Berrios, 781 So.2d at 457 (citing Weiand, 732 So.2d at 1049 (holding that a person must "retreat to the wall" unless he is in his home or it would increase the danger)).
On the other hand, "[e]vidence of the dangerous character of the victim is admissible to show, or as tending to show, that the defendant acted in self defense." Berrios, 781 So.2d at 457-58 (citing Smith v. State, 606 So.2d 641, 642 (Fla. 1st DCA 1992); § 90.404(1)(b), Fla. Stat. (1999)). "The victim's character becomes relevant to resolve an issue as to the reasonableness of the defendant's fear at the time of the incident." Berrios, 781 So.2d at 458 (citing Lozano v. State, 584 So.2d 19, 23 (Fla. 3d DCA 1991), rev. denied, 595 So.2d 558 (Fla.1992)). Before defendant may offer such character evidence, however, he "must lay a proper predicate demonstrating some overt act by the victim at or about the time of the incident which reasonably indicated to the defendant a need for action in self defense." Berrios, 781 So.2d at 458 (citing Smith, 606 So.2d at 643; Quintana v. State, 452 So.2d 98, 100 (Fla. 1st DCA 1984); Williams v. State, 252 So.2d 243, 247 (Fla. 4th DCA), cert. denied, 255 So.2d 682 (Fla.1971)). As we made clear in Berrios:
"If there is the slightest evidence of an overt act by the victim which may reasonably be regarded as placing the defendant in imminent danger, all doubts as to the admission of self-defense evidence must be resolved in favor of the accused."
781 So.2d at 457; see also Nelson v. State, 739 So.2d 1177, 1178 (Fla. 4th DCA 1999).
We think Wilson's testimony, recounting the event from his perspective, was a sufficient predicate to allow his proposed evidence. The other youths nearly ran him over as they drove by him. They drove to a stop sign a few doors from Wilson's and stopped their car. They emerged from their car, one of them obtaining a table leg from the trunk. Only then did he seek out the boat gaff. As the youths approached him, he began walking towards them. He did not think it reasonably possible to retreat to his house before they would be on him with the table leg. We conclude that his proffer constituted at least some evidence "which may reasonably be regarded as placing the defendant in imminent danger." Berrios 781 So.2d at 457.
*966 We also reverse the sentence for misdemeanor criminal mischief as being in excess of the maximum penalty for the crime.
Reversed for new trial on charge of aggravated battery.
WARNER and GROSS, JJ., concur.
NOTES
[1] The events in question took place in May 2004  which was before the amendments to section 773.012 and adoption of section 776.013 effective in 2005.