186 So.2d 535 (1966)
CITY OF MIAMI, a Municipal Corporation, Lewis B. Cruz, Jr., Robert Ingraham, and Brynley Smith, Appellants,
v.
J.C. NELSON, a Minor, by His Mother and Next Friend, Clara Nelson, and Clara Nelson, Individually, Appellees.
No. 65-513.
District Court of Appeal of Florida. Third District.
March 15, 1966.
Rehearing Denied June 7, 1966.
*536 Richard B. Stone, City Atty., and John S. Lloyd, Asst. City Atty., for appellants.
Highsmith & Ezzo, Miami, Richard H.W. Maloy, Coral Gables, for appellees.
Before TILLMAN PEARSON, CARROLL and BARKDULL, JJ.
BARKDULL, Judge.
By this appeal, the appellants [who were defendants in the trial court] seek review of a final judgment rendered upon an adverse jury verdict in an action brought by the appellees seeking damages for injuries sustained by the plaintiff, J.C. Nelson.
The cause was submitted to the jury upon the theory of an intentional tort on the part of the individual appellants, as policemen of the City of Miami, in using excessive force in apprehending the plaintiff, J.C. Nelson, and bringing him into police custody. The appellants have preserved numerous points *537 for review, many of which appear to have merit. However, we deem it necessary only to consider one basic issue to determine that the judgment under review should be reversed.
It is apparent from the record that the plaintiff, J.C. Nelson, [who was at the time of the incident 15 years of age, over six feet in height] was admittedly wandering about the streets at approximately 5:00 o'clock A.M., and ran when he was approached by a police cruiser. At or about this time the individual appellants, as police officers on duty, had received a report of an attempted breaking and entry within the vicinity where the plaintiff, J.C. Nelson, admitted he was. They received a description which was sufficient to describe J.C. Nelson as to size, manner of dress, etc. Two of the officers apprehended him on the roof of a two-story building. One of the officers climbed to the edge of the roof and saw J.C. Nelson hiding behind a ventilator and, with his gun drawn, directed Nelson to come towards him. The plaintiff, J.C. Nelson, knew that those who apprehended him were police officers.[1] The third officer arrived on the scene when this was in progress. The plaintiff, J.C. Nelson, did not go directly to the officer who commanded him, but sauntered from one side of the building to the other end, as he approached the end of it, he leaped from the second story roof to the roof of the adjoining building to the north, which was a one-story structure. There was a six-foot wire fence between the two buildings and, by this leap, he placed the fence between himself and the police officers, who commanded him to stop and discharged warning shots in the air. He proceeded to run and they shot at him, one bullet striking him, preventing further mobility on his part. Subsequently, upon the officers going around the fence, they located him at the furthermost end of the roof of the one-story building in a wounded condition.
It is apparent that, as a matter of law, the police officers were not only authorized but under a duty to arrest the plaintiff, J.C. Nelson. Breaking and entering with intent to commit a misdemeanor is a felony. See: § 810.05, Fla. Stat., F.S.A. An attempt at such is also a felony. See: § 776.04, Fla. Stat., F.S.A. A police officer may arrest without a warrant when he has reasonable grounds to believe the person to be arrested has committed the felony. See: § 901.15(3), Fla. Stat., F.S.A. Indeed, it became their duty to arrest and take into custody, without warrant, any person whom they reasonably believed had committed a felony. See: Osborne v. State, 87 Fla. 418, 100 So. 365; Dixon v. State, 101 Fla. 840, 132 So. 684; Italiano v. State, 141 Fla. 249, 193 So. 48, cert. den. 310 U.S. 640, 60 S.Ct. 1088, 84 L.Ed. 1408. The fact that the person has not actually committed a felony or that no crime of any sort has been committed makes no difference, as long as the appearances are such as to lead a police officer to reasonably believe that a felony has been committed and the person he is about to arrest or apprehend is the person *538 who has committed the felony. See: Dixon v. State, supra; Goodrich v. Lawrence, 138 Fla. 287, 189 So. 233. Where there is no dispute in the testimony about the facts constituting the reasonable grounds for belief that a felony has been committed, this question is for the court to decide. See: Dixon v. State, supra, citing Grau v. Forge, 183 Ky. 521, 209 S.W. 369, 3 A.L.R. 642.
On the basis of the information they had received over their police radio and the suspicious circumstances of finding J.C. Nelson hiding on the roof of a two-story building, after having taken extensive evasive action, the officers had reasonable grounds to believe he had committed a felony. See Flowers v. State, 152 Fla. 649, 12 So.2d 772; Turner v. State, Fla. 1954, 74 So.2d 891; Romanello v. State, Fla.App. 1964, 160 So.2d 529.
The opinion of the California court, in Allen v. McCoy, 135 Cal. App. 500, 27 P.2d 423, 28 P.2d 56, is noteworthy. There the plaintiff in a civil action claimed false imprisonment, having been arrested because of mistaken identity. The California court held that the question or existence of probable cause to believe one guilty of a crime must be determined as a matter of law from the facts and circumstances of the case, and then went on to state:
* * * * * *
"While all innocent persons should be adequately protected, with the alarming prevalence of kidnaping and crime in many modern forms, our peace officers should not be discouraged in the performance of their duties by too technical a construction of legal procedure."
* * * * * *
Having reasonable grounds to believe J.C. Nelson had committed a felony, the officers were entitled to use force which was reasonably necessary to capture him, even to the extent of killing or wounding him. See: 6 C.J.S. Arrest § 13, p. 613; Commonwealth v. Bollinger, 198 Ky. 646, 249 S.W. 786. In order to carry out their duty to take him into custody, it was necessary for them to use their firearms at the moment he began to run, after landing on the roof of the one story building.
There is a striking similarity between the facts in the instant case and the facts in the case of Clark v. Carney, 71 Ohio.App. 14, 42 N.E.2d 938. In the cited case, the defendant and other officers were notified of a burglary at a bakery and dispatched to the scene. On arrival, they discovered some men at the rear entrance to the bakery. The men fled, and the officers gave chase, finally cornering the men in an alley. The men continued to flee even after they were commanded to surrender, and warning shots were fired. Defendant Carney then fired at the men. Plaintiff's decedent was killed and another man wounded; one other escaped. The Ohio court held that the force used was necessary and reversed a judgment for the plaintiffs, stating:
* * * * * *
"A more typical case of proper means to apprehend men who were admittedly committing a felony and fleeing from arrest, therefore, can hardly be imagined. If police under such circumstances may not employ the limit of force, the law then befriends the criminal, encourages him to fly from his crimes, and insures him protection if he is injured while seeking to evade the consequences of his evil doings. Such cannot be the law."
* * * * * *
Appellees contend that J.C. Nelson was but a mere boy and should not have been shot for this reason. This, of course, is no proper reason under the circumstances. First, § 901.15(3), Fla. Stat., F.S.A., makes no mention of age. There is no mention of age, either, in Osborne v. State, supra, which makes it the duty of officers to take into custody persons who they have reasonable grounds to believe have committed felonies. Second, J.C. Nelson had the size *539 and appearance of a full grown man. There was nothing to indicate that the defendant officers ever knew that he was supposed to be a boy and not a man. Indeed, in the case of Murphy v. Murray, 74 Cal. App. 726, 241 P. 938, a California District Court of Appeal reversed a judgment based on a jury verdict against a police officer for shooting and killing a decedent, in spite of the fact that the decedent was only a sixteen-year-old boy.
Directly involved here, and of paramount importance, is the right of the general public to police protection and the duty owed to society by police officers. In the case of Sherbutte v. Marine City, 374 Mich. 48, 130 N.W.2d 920, the Michigan court has aptly stated the proposition as follows:
* * * * * *
"A necessary caveat: Though actions against municipalities may now be maintained on the basis of the tortious acts of its (sic) police officers, this is not to say that every malefactor, or recalcitrant arrestee, may only be apprehended and confined pursuant to an engraved invitation complete with R.S.V.P. Police officers still may and must exert the reasonable force necessary to perform their important duty to society."
* * * * * *
This court, in City of Miami v. Albro, Fla.App. 1960, 120 So.2d 23, not only recognized the important duties police officers must perform, but also recognized that the standard of care to be exercised by officers must be judged more liberally because of these duties and the actions the officers must take. This court went even further, in City of Miami v. Albro, supra, by stating:
* * * * * *
"It is unthinkable that a municipal corporation exercising its police power for the protection of the public should be liable in damages for every mistake of judgment by its officers."
* * * * * *
It does not appear that the officers in the instant case made any mistake in judgment. Under the facts and the circumstances existing in the area [the colored section of downtown Miami] in the early A.M., it appears that the police officers acted in good faith and no excessive force was used in apprehending what to them appeared to be a fleeing felon.
Therefore, for the reasons stated above, the final judgment here under review be and the same is hereby reversed, as we find that the trial judge should at least have directed a verdict for the defendants at the close of all the evidence, if not at the close of the plaintiff's case. See: Loftin v. McGregor, 1943, 152 Fla. 813, 14 So.2d 574; McAllister v. Miami Daily News, 1944, 154 Fla. 370, 17 So.2d 613; Golden v. Morris, Fla. 1951, 55 So.2d 714; Swilley v. Economy Cab Co. of Jacksonville, Fla. 1951, 56 So.2d 914; Manganelli v. Covington, Fla. App. 1959, 114 So.2d 320; § 54.17, Fla. Stat., F.S.A. This matter is returned to the trial court, with directions to enter a judgment for the defendants.
Reversed and remanded, with directions.
NOTES
[1] The elements of an arrest comprehend a purpose or intention to effect an arrest under a real or pretended authority, the actual or constructive seizure or detention of the person to be arrested by the one having the present power to control him, communication by the arresting officer to the one whose arrest is sought of his intention or purpose then and there to make an arrest, and an understanding by the person who is to be arrested that it is the intention of the arresting officer then and there to arrest and detain him. See: Melton v. State, Fla. 1954, 75 So.2d 291; Range v. State, Fla.App. 1963, 156 So.2d 534. However, there is no required form of words to announce the purpose to arrest. See: Giblin v. City of Coral Gables, Fla. 1963, 149 So.2d 561; 5 Am.Jur.2d, Arrest, § 1. Furthermore, while § 901.17 Fla. Stat., F.S.A. requires that an officer effecting an arrest without a warrant inform the person to be arrested of his authority and the cause of the arrest, the fact that the person to be arrested is not informed of the cause of the arrest until subsequent thereto does not necessarily deprive him of his rights See: Flowers v. State, 152 Fla. 649, 12 So.2d 772; 5 Am.Jur.2d, Arrest, § 71.