327 So.2d 230 (1976)
Dwight CHASTAIN, Appellant,
v.
CIVIL SERVICE BOARD OF ORLANDO et al., Appellees.
No. 74-1387.
District Court of Appeal of Florida, Fourth District.
February 20, 1976.
Rehearing Denied March 15, 1976.
Certification Denied March 15, 1976.
E. Thom Rumberger and J. Richard Caldwell, Jr., of Pitts Eubanks Ross & Rumberger, Orlando, for appellant.
Egerton K. van den Berg, City Atty., and Gretchen R.H. Vose, Asst. City Atty., Orlando, for appellees.
OWEN, Judge.
Appellant was dismissed from the Orlando Police Department for alleged violations of the department's regulations and the Civil Service Code. Following a hearing, the Civil Service Board of Orlando found against appellant on each of the charges and upheld his dismissal. This ruling was attacked by petition for writ of certiorari filed in the circuit court. The present appeal is from the order denying that petition.
Two of the four charges against appellant alleged facts which the department asserted to be a violation of § 200-1 of the Orlando Police Department Regulations, which provided as follows:
"Standards of Conduct"
"Members and employees shall not engage in any conduct which constitutes neglect of duty, conduct unbecoming an officer, or any act which is likely to adversely affect the discipline, good order or reputation of the department."
Appellant contends that this regulation is unconstitutionally void for vagueness under the standard enunciated in Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) in that it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application... ." A somewhat similar police department regulation prohibiting "conduct unbecoming a member and detrimental to the service" was held to be unconstitutionally vague in Bence v. Breier, 357 F. Supp. 231 (E.D.Wis. 1973) affirmed in Bence v. *231 Breier, 501 F.2d 1185 (7th Cir.1974), cert. den. 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975), the latter decision carefully distinguishing between the constitutional standards of vagueness applicable to a civilian police department regulation and the regulations involved in Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (involving military personnel) and Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (involving a certain classification of employee in government service). Academically, the decision in Bence v. Breier, 501 F.2d 1185 (7th Cir.1974) is persuasive on the issue presented. However, it is unnecessary for us to determine the constitutionality of this regulation of the Orlando Police Department in disposing of this case since we conclude that appellant's dismissal was properly upheld on the basis of a charge involving a violation of a regulation other than § 200-1.
On the basis of certain specified facts showing that appellant had shot and wounded an escaping prisoner, appellant was also charged with violating § 800-5 of the Orlando Police Department Regulations, which provided as follows:
"Deadly Force"
"Members of the department shall at all times exhaust every other reasonable means of apprehension before resorting to the use of deadly force. The use of deadly force shall be in accordance with current department directives."
The current department directives referred to in § 800-5 were embodied in General Order No. 73-5 which provided, in pertinent part:
"IV. LIMITATIONS ON USE OF THE FIREARM
A. A member of the department will discharge any departmental firearm under the following circumstances only:
* * * * * *
5. To effect an arrest, to prevent flight or escape, or to recapture a felony suspect whom he reasonably believes to have committed a crime, with the following qualifications:
a. The crime for which the arrest is sought must be an infamous crime where the use of deadly force by the perpetrator would be an ordinary consideration under the circumstances.
(1) For purposes of this directive, infamous crimes shall be murder, rape, robbery, burglary, arson, kidnapping or any other felony which involves the use or threatened use of deadly force against the individual.
b. The felony suspect believed to have committed the crime has not been identified and there is reason to believe identification cannot be made at a later date if the felon escapes.
c. A member would not ordinarily be justified in employing deadly force for such crimes as forgery, frauds, counterfeiting, embezzlement or any other crime the commission of which does not involve deadly force against an individual."
This charge (involving the shooting of the escaping prisoner) alleged facts to support the allegation that "the prisoner was not involved in a crime of violence or any crime which would justify the use of deadly force," and also alleged the conclusion that appellant "did not exhaust every other reasonable means of apprehension before resorting to the use of deadly force." Appellant contends that even if the factual allegations contained in the charge were true they were insufficient as a matter of law to justify dismissal. For this position appellant relies upon Attorney General's *232 Opinion 071-41 (March 22, 1971) opining that (1) a police officer has the authority and duty to use deadly force to prevent the escape of a fleeing felon, (2) a police chief may not limit a police officer's authority to use deadly force to only those situations involving crimes against persons, and (3) where a police chief does attempt to restrict the officer's authority in such manner, disciplinary action against an officer who violates such restrictions cannot and should not be upheld.
There is no question but that if appellant were charged with a criminal offense such as aggravated assault, as in Dixon v. State, 101 Fla. 840, 132 So. 684 (1931), or his conduct were the basis of a civil action for damages against him individually or against his employer, as in Gordon v. Alexander, 198 So.2d 325 (Fla. 1967) and City of Miami v. Nelson, 186 So.2d 535 (3rd DCA Fla. 1966), the standard or test of guilt would be whether appellant, in attempting to make the arrest or capture the escaping prisoner, had used more force than was reasonably necessary under the circumstances. Thus, to the extent that we might be concerned with the appellant's criminal or civil liability, we agree with that part of the attorney general's opinion, supra, opining that under certain circumstances a police officer has the authority to use deadly force to apprehend an escaping prisoner when the use of such force is reasonably necessary under the circumstances.
But here we are concerned, not with the matter of appellant's criminal or civil liability for his conduct, but only with departmental disciplinary action. We know of no reason why the standard of conduct by which the law measures criminal or civil liability necessarily prohibits the police department, in the course of regulating its own members, from imposing upon them a more stringent standard, the violation of which would subject the offending member to departmental disciplinary action even though such violation might not be of a nature as to subject the offending member to criminal or civil liability. In this respect, we disagree with the cited attorney general's opinion. We therefore hold that a police department may lawfully impose upon its police officers a regulation concerning the use of deadly force which is more stringent than the law imposes upon police officers for criminal or civil liability, and while such regulation would not affect the standard by which the officers' criminal or civil liability is measured, the violation of such regulation would properly subject the offending member to appropriate disciplinary action within the department.
Finally, appellant contends that while the evidence before the Civil Service Board supported the factual allegations of this charge, the evidence was insufficient to support the conclusion, i.e., that appellant did not exhaust every reasonable means of apprehension before resorting to the use of deadly force. Admittedly, the issue is a close one as reflected by the fact that while appellant was required to make and act upon a split-second decision, the subsequent investigation by appellant's superior officer led first to a decision that no violation of the General Order had occurred and only later, after a second review, to the determination that there had been a violation. Allowing however for the recognized leeway accorded law enforcement officers in the exercise of judgment in situations of this type, Weil v. City of Miami Beach, 158 So.2d 798 (3rd DCA Fla. 1963), the record here contains a basis upon which the Civil Service Board could reach the conclusion that the charge was sustained. That being so, neither the circuit court in its appellate capacity nor this court should reweigh the conflicting evidence. Wilson v. McCoy Mfg. Co., 69 So.2d 659 (Fla. 1954); City of Opa Locka v. Carlile, 323 So.2d 661 (3rd DCA Fla. 1975).
Affirmed.
WALDEN, C.J., and DOWNEY, J., concur.