376 So.2d 230 (1979)
William D. COBB, Appellant,
v.
STATE of Florida, Appellee.
No. 53832.
Supreme Court of Florida.
March 29, 1979.
Rehearing Denied November 13, 1979.
Alan H. Schreiber, Public Defender and Stuart M. Lerner, Asst. Public Defender, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
ENGLAND, Chief Justice.
This case is before us on transfer of an appeal commenced in the Fourth District Court of Appeal.[1] The court directly and initially passed on the validity of section 782.11, Florida Statutes (1975), which makes it a second-degree felony to
unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any other *231 unlawful act, or after such attempt shall have failed... .
Pursuant to article V, section 3(b)(1) of the Florida Constitution, we have jurisdiction to review the trial court's order which upheld the validity of the statute.
On June 19, 1976, William Cobb, a police officer, responded to a report that two apparent trespassers were entering a field in Parkland, Florida. The field was known to contain hallucinogenic mushrooms, and the police department had been asked to guard against trespassers entering the property. Accompanied by a former Parkland resident, Cobb drove to the northern edge of the property, ordered his companion to remain with the car, and entered the field. Trees and foliage blocked the former resident's view of subsequent events.
Cobb's testimony and statements introduced at trial indicate that he came upon Donald Eldridge and attempted to arrest him for trespassing. After handcuffing Eldridge's left wrist, but before his right hand could be secured, Cobb was accosted by the second trespasser, Roger Daugherty. Still holding on to Eldridge, Cobb fell to the ground, noticed Daugherty again approaching him, and pulled his revolver. When Daugherty did not respond to an order to stop and a warning shot, Cobb fired toward him. Daugherty fell mortally wounded. Eldridge and Cobb began to scuffle and, during the course of the struggle, Eldridge received one fatal gunshot wounds to the head.
Cobb was indicted on two counts of unnecessary killing to prevent an unlawful act, and, after his motion to dismiss the indictment was denied, was tried and found guilty of the unnecessary killing of Eldridge.[2] In this appeal, he raises several points for our consideration.
Cobb first asserts that section 782.11 is unconstitutionally vague, in that the phrase "unnecessarily kill" lacks the explicit meaning necessary to apprise men of common understanding of the conduct to which it applies. We upheld a statute containing a similar phrase in Campbell v. State, 240 So.2d 298 (Fla. 1970), where the defendant was charged with "unnecessarily or excessively" chastising a child. We there said:
The particular words complained of, "unnecessarily or excessively" are not vague when considered in the context of the entire Statute and with a view to effectuating the purpose of the act. The fact that specific acts of chastisement are not enumerated, an impossible task at best, does not render the statutory standard void for vagueness. Criminal laws are not "vague" simply because the conduct prohibited is described in general language.[3]
When the words "unnecessarily kill" in section 782.11 are considered together with the remainder of chapter 782, they are sufficiently precise to meet the constitutional standard for definiteness in penal statutes. Homicides committed while resisting another's unlawful act are punishable only if not excusable, as provided in section 782.03, Florida Statutes (1975), or if not justifiable, as provided in section 782.02 or chapter 776, Florida Statutes (1975). Read with these provisions, section 782.11 is not impermissibly vague.
Cobb further contends that the uncontradicted evidence adduced at trial establishes that Eldridge's killing was justified, pursuant to sections 776.05 and 776.07. These sections provide that any force is justifiable when a law enforcement officer "reasonably believes [it] necessary" to defend himself or prevent an escape. We disagree with Cobb. There was sufficient evidence to support the jury's determination that the killing was unjustified. The major features of this evidence were Cobb's testimony concerning what transpired, testimony *232 by the pathologist who performed an autopsy on Eldridge that the bullet entered the rear of Eldridge's head, followed a 35° downward path, and exited from the right frontal bone, and physical and testimonial evidence that holes in Eldridge's hat correlate to the deceased's head wounds (suggesting that the hat was still on Eldridge's head when he was shot). The jury could find from the evidence that Eldridge did not pose a threat sufficient to support Cobb's asserted belief that deadly force was necessary.
Cobb next asserts that the trial court erred in giving jury instructions both on general manslaughter and on culpable negligence,[4] inasmuch as an "unnecessary killing" described in section 782.11 is a crime separate and distinct from general manslaughter. In view of the facts adduced at trial, we hold that the manslaughter and culpable negligence instructions were proper for the crime charged in this case.[5] The elements of general manslaughter, in conjunction with the additional factor of resistance against another's attempt to commit an unlawful act, can constitute "unnecessary killing" manslaughter.[6]
Cobb raises as further error comments made by the prosecutor during closing argument which, Cobb contends, were so prejudicial as to deny him a fair trial. While Cobb's counsel moved for a mistrial in response to these comments, a mistrial motion is appropriate only when the error committed was so prejudicial as to vitiate the entire trial.[7] Our review of the record here indicates that the prosecutorial comments made in this case do not constitute such grave error.
Having considered all points claimed as error by Cobb, including those not discussed, we affirm Cobb's conviction and sentence.
It is so ordered.
ADKINS, BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree that section 782.11 is constitutional; however, I believe that the uncontradicted evidence in this case establishes that the killing was justified. The trial court should have granted Cobb's motion for judgment of acquittal.
If Cobb had known in advance that the two trespassers were going to resist arrest with violence, he probably would not have approached them alone. Under the circumstances, however, it was not unreasonable for him to proceed without a backup. From the evidence, there can be no other lawful conclusion but that Cobb, when he was attacked by the two trespassers, reasonably believed that the use of deadly force was necessary to defend himself. If he had not acted as he did, he would not be the defendant in this case, but, rather, probably would be the dead victim.
It is undisputed that when Cobb went into the field looking for the two trespassers, he first came upon Eldridge and told him that he was under arrest. After securing Eldridge's left wrist with a handcuff, he was jumped from behind by Daugherty. He was knocked down, and as he got up, he saw Daugherty running at him. He fired a *233 warning shot, but Daugherty refused to stop. He then fired two more shots, killing Daugherty. (The jury found Cobb "not guilty" of this killing.) Then, while still holding Eldridge's right arm, Cobb moved toward Daugherty. Eldridge, without warning, swung his left arm around, striking Cobb in the eye with the handcuff. Cobb testified that when he was hit, all he "saw was white"; he was "dazed"; his "eyes started gushing water"; "it was more or less feel from there on out"; and he "couldn't focus in on anything." The next thing Cobb knew, Eldridge had "ahold of the gun because I could feel the hammer of the gun pushing back into the palm of my hand." He was losing control of the gun. While fighting for the gun, Cobb "yanked the gun" back and pulled the trigger, and the gun went off, fatally wounding Eldridge. Cobb's testimony at trial was consistent with the statement that he had made prior to trial. The testimony of the pathologist as to the path of the bullet is not sufficient for the jury to conclude that the shooting happened in any manner other than that described by Cobb. The fact that Eldridge had his hat on and that he was shot in the back of the head is not inconsistent with Cobb's description of the life-and-death struggle between him and Eldridge.
Accordingly, I would reverse the conviction and discharge the defendant. Cf. McArthur v. State, 351 So.2d 972 (Fla. 1977).
NOTES
[1] See art. V, § 2(a), Fla. Const.; Fla. R. App. P. 9.040(b).
[2] The jury found Cobb not guilty of the unnecessary killing of Daugherty.
[3] 240 So.2d at 299. (Footnote omitted.) Similarly, we recently held that the term "necessary" is not unconstitutionally vague. State v. Joyce, 361 So.2d 406 (Fla. 1978), receding from State v. Winters, 346 So.2d 991 (Fla. 1977), to the extent that dicta in that decision suggested otherwise.
[4] § 782.07, Fla. Stat. (1975), provides:

The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[5] These instructions need not be applicable to every prosecution under section 782.11.
[6] Cf. Whitehead v. State, 245 So.2d 94 (Fla.2d DCA 1971) (elements of second-degree murder, in conjunction with an attempt to prevent an unlawful act, may constitute "unnecessary killing" manslaughter).
[7] Perry v. State, 146 Fla. 187, 200 So. 525 (1941).