# IN RE: THE MATTER OF KEITH A. ROZIER

County Court, Orange County

March 12, 1986

## OPINION OF THE COURT

GEORGE A. SPRINKEL IV, County Judge.

### VERDICT OF THE COURT UPON INQUEST INTO THE DEATH OF KEITH A. ROZIER

A Public Inquest was held by this Court on February 27 and February 28, 1986 pursuant to a Petition for Public Inquest, filed by the State Attorney in the Ninth Judicial Circuit of Florida. The Inquest was conducted in accordance with the provisions of Chapter 936, Florida Statutes, to determine whether or not there exists probable cause to believe that the death of Keith Rozier was the result of a criminal act, criminal negligence, or foul play. The person responsible for the death of Keith Rozier is Curtis Myhre, an Officer of the Orlando Police Department. Rozier's death occurred by means of

gunshot wounds inflicted upon Rozier by Officer Myhre who fired his department-issued shotgun at Rozier.

On January 31, 1986 at 7:48 A.M. Officer Myhre, while on uniform patrol duty, was dispatched by radio as a backup officer to Apartment 116 of the Palms Apartments on Mercy Drive, Orlando, Florida, where he met Officer Trina Medvec and Officer Bobbie Barnwell. The three officers went to Apt. 116 to search for suspects in an armed robbery which had been reported that morning at 6:47 A.M. by Patrick Trice. Trice, in an excited exchange with the police department by telephone at 6:47 A.M., had reported he had been the victim of an armed robbery by two black males and a black female, involving the use of two handguns and a knife. Before Officer Myhre arrived, Trice gave a sworn written statement that an armed robbery had occurred in front of Apt. 116. Upon knocking at the door to Apt. 116, two black males emerged less than a minute apart. The first black male to exit, Michael Burke, was shown to Trice, who was standing in the parking lot below. Trice was asked by Myhre if Burke was ne of the men who robbed him. Trice responded in the negative. Then Keith Rozier emerged from the apartment onto the second floor landing. Trice was asked by Myhre if Rozier, whose identity was unknown to Myhre, was one of the men who had robbed him. Trice responded affirmatively indicating that Rozier was one of the persons who had committed the armed robbery of Trice. At this point a struggle ensued between Rozier and Officers Myhre and Medvec (Officer Barnwell was inside Apt. 116 at this time). Rozier protested he had not done anything wrong and attempted to remove his left arm from the grasp of Officer Medvec. Officer Myhre, who was armed with a 12 gauge, pump action shotgun, placed the end of the barrel against Rozier's cheek and told him to quit resisting and ". . . do as the lady [Officer Medvec is female] says." The struggle subsided for a brief moment, but Rozier started to resist again. Officer Myhre jabbed Rozier with the butt of the shotgun once or twice in the face, neck or shoulder to convince Rozier to quit resisting. Rozier continued his efforts to escape. Almost instantaneously, Rozier broke his left arm free from the grasp of Officer Medvec. A portion of the black of Rozier's sweatshirt was torn away in the grasp of Officer Myhre and Rozier took flight from the police officers.

Medvec and Myhre chased Rozier through the adjacent breezeway of the apartment building and saw Rozier disappear through a breezeway of the next apartment building. After crossing through another breezeway in this second apartment building, Officer Myhre saw Rozier running diagonally away from Myhre toward the breezeway of a third apartment building. At this point, it was apparent to Myhre that

Rozier was a faster runner than Myhre and that Myhre would not be able to catch Rozier on foot. Officer Medvec was farther behind in the pursuit. Officer Myhre elected to use deadly force to prevent the escape of Keith Rozier, firing his shotgun from a position approximately sixty (60) feet from Rozier. Shotgun pellets struck Rozier in the back, right arm and right side. This occurred at 7:59 A.M. and within minutes Keither Rozier died as a result of the gunshot. Officer Myhre handcuffed and searched Rozier for weapons. Rozier was unarmed.

The courts of the State of Florida have adopted the following analytical framework in reviewing a homicide case: "Under Florida law, a homicide is punishable if it is not justifiable under either *Fla. Stat.* Section 782.02 (1975) or Chapter 776 of the Florida Statutes, or it is not excusable under *Fla. Stat.* 782.03 (1975)." *Cobb v. Wainwright*, 666 F. 2d 966, 969 (5th Cir. 1974). See also, *Cobb v. State*, 376 So. 2d 230 (Fla. 1979); *State v. Carrizales*, 365 So. 2d 274 (Fla. 1978); *Whitehead v. State*, 245 So.2d 94 (2d DCA Fla. 1971).

Section 782.03, Florida Statutes, the excusable homicide statute, deals primarily with accidental acts, or acts or misfortune committed in the heat of passion or upon sudden combat or provocation and does not apply in this fact situation.

All of Chapter 776 and Section 782.02, Florida Statutes, address justifiable uses of force. However, for the purposes of this Inquest, the pertinent Section is 776.05, Florida Statutes, which states:

A law enforcement officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest or when necessarily committed in retaking felons who have escaped or when necessarily committed in arresting felons fleeing from justice.

The United States Supreme Court has recently imposed a stricter civil liability standard for the use of deadly force in *Tennessee v. Garner*, 471 U. S. ——, 85 L. Ed 2d 1, 105 S.Ct. ——, 1985. In *Garner*, a Memphis police officer, responding to a burglary-prowler call heard a door slam and saw a young male run across the backyard of a residence to a fence. The officer was reasonably sure that Garner was unarmed. The officer called out "police halt" and Garner began to climb over the fence. If Garner made it over the fence the officer was convinced he would elude capture. Garner was shot by the officer and died. The father of Garner subsequently filed suit in the Federal

District Court for damages under 42 U. S. Code § 1983 for violation of his son's civil rights. The Supreme Court held:

The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed nondangerous suspect by shooting him dead. The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects.

It is not, however, unconstitutional on its face. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if where feasible, some warning has been given. As applied in such circumstances, the Tennessee statute would pass constitutional muster. *Tennessee v. Garner*, 85 L Ed. 2d at 9, 10. See also, *Acoff v. Abston*, 762 F. 2d 1543 (11th C.C.A. 1985).

The *Garner* decision sets standards of conduct by which an officer is to be measured for determination of civil liability only, and does not alter or affect the statutory criminal law provisions in *Fla. Stat.* § 776.05, our "fleeing felon" law.

Pursuant to § 776.05, an officer having probable cause to believe a suspect has committed a felony, may use the amount of force reasonably necessary to apprehend the suspect even to the extent of shooting and killing him. *City of St. Petersburg v. Reed*, 330 So.2d 256 (2d DCA Fla. 1976); *Miami v. Nelson*, 186 So. 2d 535 (3d DCA Fla. 1966). In the *Nelson* case, the court further noted that under § 776.05, "the fact that the person has not actually committed a felony or that no crime of any sort has been committed makes no difference, as long as the appearances are such as to lead a police officer to reasonably believe that a felony has been committed and the person he is about to arrest or apprehend is the person who committed the felony." Id at 536.

**55**

Officer Myhre had probable cause to believe that a felony had been committed by Rozier. Myhre heard police radio broadcasts of Officer Medvec's ongoing investigation into an alleged armed robbery. He saw the alleged victim, Patrick Trice, when he arrived at the scene. A written sworn statement by Trice had been obtained by Medvec prior to his arrival. Trice identified as Rozier as one of his assailants, in Officer Myhre's presence. Further, Officer Myhre had probable cause to believe that Rozier had committed a violent crime involving the threatened infliction of serious physical harm.

Since it is determined that Myhre had probable cause to believe that Rozier had committed a felony, in this case a violent crime involving the threatened infliction of serious physical harm, the remaining question is whether the use of deadly force was justifiable. Was the force used reasonably necessary under the circumstances measured in terms of an ordinarily prudent and intelligent person with the knowledge and in the situation of the police officer? See *Dixon v. State*, 132 So. 684 (Fla. 1931); *Mitchell v. State*, 368 So.2d 604 (3d DCA Fla. 1979); *Cobb v. State*, 376 So.2d 230 (Fla. 1979); *Cobb v. Wainwright*, 666 F.2d 966 (5th Cir. 1982); *State v. Kadet*, 455 So.2d 389 (5th DCA Fla. 1984).

Most of the above cited cases charge violations of *Fla. Stat.* § 782.11 which is entitled Unnecessary Killing to Prevent Unlawful Act. *Fla. Stat.* § 782.11 does not apply under the circumstances here. "An element of this particular statute is that the victim was committing or attempting to commit a felony or other unlawful act independent of the threatened act directed at the defendant." *State v. Kadet*, 455 So.2d 389, 390 (5th DCA Fla. 1984). In other words, for an officer to be found guilty of a violation of *Fla. Stat.* § 782.11, the killing would have to occur while the deceased was in the actual act of robbing the victim. That, clearly, has not occurred in this case.

Still, the standard for determining if Officer Myhre was justified in the use of deadly force is whether it was reasonable and necessary under the circumstances. If the use of deadly force was not justified then this Court would have probable cause to believe that he had committed the crime of manslaughter as set out in *Fla. Stat.* § 782.07.

While the Orlando Police Department may have policies and regulations governing the use of force, these directives have no bearing on whether the officer's conduct falls outside the parameters of *Fla. Stat.* 776.05, potentially subjecting him to criminal culpability under *Fla. Stat.* § 782.07. The relevant questions before this Court involve only whether the officer had probable cause to arrest Rozier and whether

the force used was reasonably necessary under the circumstances. Departmental use of force regulations cannot be applied to determine these legal questions.

Departmental regulations have been rejected by the courts as a basis for determining either the civil or criminal liability of a police officer. In *Chastain v. Civil Service Board of Orlando*, 327 So.2d 230 (4th DCA Dla. 1976), the Court discussed the effect of departmental regulations. The Court held that:

"A police department may lawfully impose upon its police officers a regulation concerning the use of deadly force which is more stringent than the law imposes upon police officers for criminal or civil liability, . . . such regulation would not affect the standard by which the officers' criminal or civil liability is measured. . . . Id. at 232.

In a civil action against a police officer for assault and battery, the Court of Appeals in the Second District cited *Chastain* for the proposition that a departmental regulation "would not affect the standard by which the officer's criminal or civil liability was measured." *City of St. Petersburg v. Reed*, 330 So.2d 256, 258 (2d DCA Fla. 1976).

*Chastain* states the standard as follows:

There is no question but that if appellant were charged with a criminal offense such as aggravated assault, as in *Dixon v. State*, 101 Fla. 840, 132 So. 684 (1931), or his conduct were the basis of a civil action for damages against him individually or against his employer, as in *Gordon v. Alexander*, 198 So.2d 325 (Fla. 1967), and *City of Miami v. Nelson*, 186 So. 2d 535 (3rd DCA Fla. 1966), the standard or test of guilt would be whether appellant, in attempting to make the arrest or capture the escaping prisoner had used more force than was reasonably necessary under the circumstances. Id. at 232.

In determining whether Officer Myhre's use of deadly force was reasonably necessary under the circumstances, the Court must look to the circumstances as they presented themselves to Officer Myhre when he fired his shotgun, killing Keither Rozier.

Officer Myhre had probable cause to believe Rozier had committed a violent crime. He had information that the suspects had been armed with a .38 cal. handgun and another handgun with a barrel 5 to 6 inches long and a knife, at the time the alleged armed robbery had been committed, less than ninety (90) minutes earlier.

He had reason to believe that this crime was a conspiracy among

**57**

three assailants. He was not certain that Rozier was unarmed. He did not know the identity of Keith Rozier at the time. Rozier had continued to struggle in attempting to escape the grasps of Officer Medvec, even when confronted with the barrel of a shotgun touched to his face. He was rapped sharply on the shoulder or face with the butt of the shotgun by Officer Myhre who was attempting to subdue him and to prevent his escape. (Dr. Thomas Hegert, Orange County Medical Examiner, in performing an autopsy on the body of Rozier, could find no evidence of trauma on the shoulders, neck or face of Rozier which would have been consistent with a blow from the butt of a shotgun. This coupled with the testimony of civilian and law enforcement witnesses leads the Court to the conclusion that the blow struck by Officer Myhre with the butt of his shotgun were not sufficiently strong enough to cause injury or severe pain to Rozier. It is the Court's conclusion that Rozier intended to run from the officers before these blow were struck.) Even when confronted by the threat of deadly force on the apartment landing he resisted and ran. All of the civilian witnesses who observed the struggle testified that it was obvious the police meant business.

In spite of this, Rozier elected to run, escaping the officers grasps. This flight to avoid custody gave more reason to Officer Myhre to believe that Rozier had committed an armed robbery. During the chase it was evident that Rozier was faster than Officer Myhre or Officer Medvec and was escaping. If Rozier had gotten through that last breezeway where he was shot, there was a large apartment complex of twenty-eight major buildings surrounding him. Officer Myhre knew if he did not stop Rozier then, he would escape. Officer Myhre testified he yelled "Stop" and that Rozier looked at him and began to accelerate away from Myhre. Orlando Police Department policy strictly forbids the firing of a warning shot and none was fired. It was then that Myhre pulled his shotgun up to aim and fired.

Under all of these circumstances, the Florida law permits an officer to use deadly force to prevent a suspect who he has probable cause to believe has committed a felony, from escaping.

Under all of these circumstances, the more stringent Orlando Police Department policy permits its officers to use deadly force to prevent the escape of a suspect whom the officer has probable cause to believe has committed armed robbery.

And lastly, even though it is not the standard to which this Inquest was held, under all of these circumstances, Officer Myhre's conduct meets the most stringent standard of all, upon which to judge whether

58

his actions were reasonable and necessary, the standard set out by the United States Supreme Court in *Tennessee v. Garner.*

This was not the first time that Keither Rozier had escaped from a police officer. In 1983, when placed under arrest for failing to have a valid driver's license, he broke from a police officer's grasp and fled on foot, and after being chased by the officer, escaped. He was subsequently convicted of escape and served forty-five (45) days in the Orange County Jail. Keith Rozier had been convicted of twelve (12) felony crimes in Orange County in 1983 and 1984 and served time in the state prison system. The result of Keith Rozier's last attempt to escape from police officers was indeed tragic and his prior record made him no less of a human being than any one of us. Nevertheless, he controlled his own destiny.

There exists no probable cause to believe that the death of Keith A. Rozier was the result of a criminal act, criminal negligence, or foul play.