Joseph Todd Eric BROWN, Plaintiff,

v.

CITY OF CLEWISTON and Luis Perez, Defendants.

No. 83–8065–Civ.

United States District Court, S.D. Florida.

Sept. 22, 1986.

John Cecilian, Paxton, Crow, Bragg & Austin, P.A., West Palm Beach, Fla., for defendants.

Michael Nugent, Cone, Wagner, Nugent & Johnson, P.A., West Palm Beach, Fla., for plaintiff.

ORDER GRANTING PEREZ' MOTION FOR SUMMARY JUDGMENT: FINDINGS OF FACT CONCLUSIONS OF LAW

PAINE, District Judge.

This cause is before the Court for consideration of the motion for summary judgment (D.E. # 63) filed by defendant LUIS PEREZ (hereafter referred to as "PEREZ") pursuant to Rule 56 of the Federal Rules of Civil Procedure. PEREZ contends that there exists no genuine issue of material fact left to be decided and that he is entitled to judgment as a matter of law. We agree.

This civil rights claim against the City of Clewiston and Officer Perez was filed in

1982. The amended complaint alleges that these defendants deprived plaintiff BROWN of constitutional rights secured to him through the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, under color of law, in violation of the Civil Rights Act of 1861, 42 U.S.C. § 1983. The plaintiff includes two (2) pendant claims for negligence (Count II) and assault and battery (Count III) against both defendants [1] as well. All of these claims are predicated on a shooting incident which occurred in June, 1979. The plaintiff BROWN was allegedly shot by officer PEREZ when he (the plaintiff) attempted to flee from officer PEREZ after the commission of a felony.

In his answer (D.E. 43), PEREZ asserts the defense of qualified immunity. The instant motion for summary judgment is based on the application of that defense to the uncontroverted facts enumerated below. In opposition, plaintiff BROWN argues that there exists a genuine issue of material fact, to wit: Whether officer PEREZ acted reasonably when he used deadly force to effectuate the arrest of a fleeing felon.[2]

### FINDINGS OF FACT

The parties have stipulated to the following facts: On June 18, 1979, defendant LUIS PEREZ was a police officer employed by the City of Clewiston. On that date, PEREZ was in the vicinity of Concordia Avenue in the City of Clewiston and was observing an apartment located at 834 Concordia Avenue. Officer PEREZ was working within the course and scope of his employment at this time and during the course of the subsequent events.

As officer PEREZ watched, the plaintiff BROWN went to the back of the apartment at 834 Concordia Avenue, broke the glass in a window there, and crawled into the apartment. BROWN entered the apartment with the intent to steal a stereo and/or other property. Thereafter, BROWN exited the apartment and returned to a car which was parked nearby. Three (3) of his friends awaited him there.

Officer PEREZ approached the parked vehicle, announced that he was a police officer, and told BROWN that he was under arrest. At the time, Officer PEREZ knew who the plaintiff was, knew that the plaintiff was a juvenile (BROWN was fifteen (15) years of age in 1979) and knew the plaintiff's address. The plaintiff BROWN knew that PEREZ was a police officer and that he (PEREZ) was attempting to place the plaintiff under arrest.

After PEREZ told the plaintiff he was under arrest, BROWN attempted to escape arrest by fleeing. Officer PEREZ discharged his firearm at the plaintiff to prevent his escape.

The following facts, although not stipulated to, are uncontroverted: BROWN committed a felony, to wit: burglary. When Officer PEREZ discharged his firearm, he was acting pursuant to the Florida "Fleeing Felon Statute". BROWN was unarmed and not an immediate threat to officer PEREZ or any other person.

### CONCLUSIONS OF LAW

#### A. *Alleged violations of 42 U.S.C. § 1983*

The plaintiff claims that Officer PEREZ deprived him of rights guaranteed to him by the Fourth Amendment proscription

---

1. Each count in the complaint contains a separate prayer for relief. The plaintiff requests damages against both defendants in each count. Although the allegations in Count II of the complaint, for negligence, appear to state a claim against the CITY only, and not the defendant PEREZ, the prayer for relief asks for judgment against the "defendants". In our discussion, herein, we will address the claim for negligence as to defendant PEREZ, even though neither

party has discussed it in any of the legal memoranda filed in this suit.

2. The plaintiff lists a number of "issues" which, he says, are issues of material fact precluding summary judgment. We will address each of these issues as they become relevant to our discussion. Suffice to say that those items are, for the most part, either issues of law or are non-material issues of fact.

against unreasonable searches and seizures and due process rights guaranteed by the Fifth and Fourteenth Amendments. Officer PEREZ argues that he is entitled to prevail on plaintiff's claim based on the defense of qualified immunity. An arrest is a "seizure" within the proscription of the Fourth Amendment as it is applied to the states through the Fourteenth Amendment. The plaintiff has stated a claim against Officer Perez pursuant to 42 U.S.C. § 1983. We have jurisdiction of this cause pursuant to 28 U.S.C. § 1343 and will exercise our discretionary pendant jurisdiction over the state claims asserted in the complaint.

### 1. Summary Judgment Standard and Qualified Immunity

In order to prevail on the qualified immunity defense (described, *infra*), PEREZ must show that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R. Civ.Pr. 56; *American Viking Contracters, Inc. v. Scribner Equipment Company*, 745 F.2d 1365 (11th Cir.1984). If PEREZ sufficiently supports his factual and legal contentions in accordance with the standard outlined above, the burden shifts to the party opposing the motion for summary judgment—i.e., the plaintiff herein—who must come forward with significant probative evidence demonstrating that a triable issue of fact does exist, or showing that the movant is not entitled to judgment as a matter of law. *American Viking*, at 1369.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court determined that government officials are entitled to a qualified immunity in actions at law for civil damages arising from the alleged deprivation of constitutional rights if the following criteria are met: (1) the official was performing a discretionary function within the

course and scope of his/her employment; and (2) the official's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. As the Court pointed out, this is an objective standard; it is a "test that focuses on the objective legal reasonableness of an official's acts." *Id.* at 819, 102 S.Ct. at 2739. *See, also, Acoff v. Abston*, 762 F.2d 1543, 1549 (11th Cir.1985) (stating that eligibility for immunity is determined on an objective basis).[3]

In addition, the Supreme Court encouraged the practice of summary disposition of such suits. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Since an officer's subjective beliefs are irrelevant to the defense of qualified immunity, once it is established that the officer was performing a discretionary function within the course and scope of his employment, it is the function of the judge to determine whether the law was clearly established at the time the incident occurred. *Id.* The officer's defense may be rebutted, however, if the plaintiff can show that the officer acted in bad faith or with malice. *See, Clark v. Beville*, 730 F.2d 739, 740 (11th Cir.1984). Thus, in the case at bar, summary judgment should be granted in favor of PEREZ if PEREZ meets the criteria enumerated above. The plaintiff can only defeat summary judgment if he comes forward with significant probative evidence showing that PEREZ acted with bad faith or malice.

It is fairly well-settled that police officers are "government officials" and that they are entitled to utilize the defense of qualified immunity. *See, Harlow*, 457 U.S. at 819, n. 30, 102 S.Ct. at 2738 n. 30; *Accord, Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and *Acoff v. Abston*, 762 F.2d 1543 (11th Cir.1985).

---

**3.** Prior to the Court's decision in *Harlow*, the qualified immunity defense as it then existed was a dual test of objective and subjective components. Stated succinctly, an officer was only entitled to qualified immunity if he established *his* reasonable, good faith belief that his actions were lawful and within the scope of his authority. *See, e.g., Barker v. Norman*, 651 F.2d 1107,

1120 (5th Cir.1981). The focus after *Harlow* is no longer on the official's actual good faith belief, a point which the plaintiff herein misses entirely. An officer's actual good faith belief in the propriety of his actions is not really relevant after *Harlow*. The only inquiry is whether a reasonable person in the officer's position could have believed his actions were lawful.

The parties have stipulated that PEREZ was acting within the course and scope of his employment when the incident occurred. It is axiomatic that the means used to effectuate an arrest are within the discretion of the police officer (at the very least, the plaintiff does not contend that Officer PEREZ was not performing a discretionary function at the time the shooting incident occurred). All other pertinent facts being uncontroverted (i.e., that the plaintiff was an unarmed fleeing felon and PEREZ shot him to prevent his escape), there exists no genuine issue of material fact which remains to be decided. The only issue remaining is one of law, to wit: Whether PEREZ violated clearly established statutory or constitutional law of which a reasonable person would have known in June, 1979 when he shot an unarmed fleeing felon to prevent that felon's escape from arrest.

### 2. Clearly Established Law

■ In 1979, the *Florida Statutes* provided, in pertinent part, that a law enforcement officer was justified in the use of *any* force "necessarily committed in arresting felons fleeing from justice." Fla.Stat. § 776.05 (1979). This statute was a codification of the common-law rule that an officer could use deadly force to apprehend a fleeing felon. Prior to its codification by statute, Florida common-law clearly approved the use of force to effect the capture of a fleeing felon (regardless of the nature of the underlying felony), even to the extent of killing or wounding him. *See, Gordon v. Alexander,* 198 So.2d 325 (Fla. 1967); *Miami v. Nelson,* 186 So.2d 535 (Fla. 3d DCA 1966); and *City of St. Petersburg v. Reed,* 330 So.2d 256 (Fla. 2d DCA 1976). In each of these cases, the "necessary" requirement was applied to mean that force which was necessary to effect an immediate capture of the felon. Once the underlying facts are established, the "necessary" requirement is really an issue of law. In the case at bar, it is uncontroverted that BROWN was fleeing from PEREZ, who was unable to catch him (D.E. 102, pp. 19–21). PEREZ knew that after committing burglaries on other occasions (D.E.102, p. 7), BROWN had left the jurisdiction (D.E.102, p. 31). Thus, it was extremely likely that PEREZ would not find BROWN if he was not caught then.

This law was in effect in June, 1979 when the shooting incident between the parties to this case occurred. At the time, it was clearly established that a law enforcement officer was justified in the use of deadly force to apprehend a felon fleeing from justice, regardless of the nature of the underlying felony and without reference to whether the escaping felon was armed or dangerous. We hold that in June, 1979 Florida statutory law regarding the use of deadly force was clearly established, however, PEREZ did *not* act in violation of that law.

This conclusion is supported by the deposition testimony of defendant's expert witness, Barry Krischer, a former assistant state attorney and police academy instructor. In his deposition, he stated that, " . . . in one specific case that I had that is almost identical to this case, my opinion is that under the laws that existed at that time, . . . the shooting was justifiable under the law of the State of Florida." (D.E. 101, Page 18, Line 15).

In an attempt to refute defendant's position that Florida law permitted the use of deadly force to apprehend a fleeing felon, the plaintiff argues the police department regulations for the City of Clewiston Police Department were much more restrictive than the Florida Statutes. It is contended that the Clewiston department regulations only permitted the use of deadly force if the police officer reasonably believed that either he or members of the community were in danger. We make no determination in *this* Order as to what the police department regulations were in 1979, since we find that they are irrelevant to PEREZ's liability (these regulations are relevant with regard to the City's liability).

■ Assuming, arguendo, that the police department regulations for the City of Clewiston did not authorize the use of

deadly force in a situation such as that confronted by PEREZ, these regulations may not be used to impose civil liability on a police officer who acts pursuant to a state statute. In *Chastain v. Civil Service Board of Orlando*, 327 So.2d 230 (Fla. 4th DCA 1976), it was held that a police department may lawfully impose upon its officers a regulation concerning the use of deadly force which is more stringent than legal standards for criminal or civil liability. Where an officer violates the stricter department regulations, the department may legally reprimand the offending officer. *Id.* at 232. However, in an action at law for civil damages, it is the state standard which is controlling, not the narrower departmental regulations. *City of St. Petersburg v. Reed*, 330 So.2d 256 (Fla. 2d DCA 1976). The rationale for this policy appears to be that the plaintiff in the civil suit (more often than not the erstwhile fleeing felon) has no right to rely on the departmental regulations as creating a stricter duty than that imposed by the state statute.

Although the plaintiff did not argue the point, the stricter police department regulations which may have existed at the time of the shooting incident would be relevant to rebut PEREZ's objective good faith reliance on the Florida Statute permitting the use of deadly force. However, Officer PEREZ testified that as far as he was aware, he *was* acting in conformity with departmental regulations (D.E. 102, pp. 49–52). Accordingly, we find, as a matter of law, that PEREZ acted in accordance with the state statute permitting the use of deadly force. The plaintiff has not come forward with significant probative evidence demonstrating that PEREZ acted in bad faith or with malice.

Having determined that PEREZ did not violate clearly established statutory law, our next inquiry is whether constitutional law regarding the use of deadly force was clearly established, and if so, whether PEREZ violated that law. In 1979, Florida was not the only state to have adopted the common-law rule regarding the use of deadly force. As the Supreme Court later

noted in *Tennessee v. Garner*, 471 U.S. 1, 15, 105 S.Ct. 1694, 1703–04, 85 L.Ed.2d 1 (1985), at least 22 states (other than Florida) had adopted this common-law rule by statute or case law. Thus, the Court stated in 1985, "it can not be said that there is a constant or overwhelming trend away from the common-law rule [that a police officer may use deadly force to apprehend a fleeing felon]." *Id.* at 18, 105 S.Ct. at 1705.

A clearly established rule is one that has been declared. *Acoff v. Abston*, 762 F.2d at 1550, *citing, Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978). At the time of the shooting incident in question, there was no decision from any of state courts in Florida, or any federal district court in Florida, or the Fifth Circuit Court of Appeals, or the U.S. Supreme Court, holding the Florida statute which allowed the use of deadly force to apprehend a fleeing felon (or any other similar statute) unconstitutional. On the national level, only one (1) court had openly declared that such a statute was unconstitutional.

In *Mattis v. Schnarr*, 547 F.2d 1007 (8th Cir.1976), the Court declared that the practice of shooting a fleeing felon was unconstitutional on due process grounds, and held that a state statute permitting the use of deadly force to apprehend an unarmed fleeing felon who posed no immediate threat to the officer on-the-spot or the community in general could not be enforced. (This decision was roundly condemned in a dissent by three of the judges as a violation of the separation of powers. *Id.* at 1021). This decision may have been the forerunner of what was to follow, but we are not convinced that it established the consitutional rule that a police officer is not justified in the use of deadly force to apprehend a fleeing felon. That rule was not established until 1985, when the Supreme Court decided *Tennessee v. Garner, supra.*

That case overrules the common-law principle adopted by close to half of the states and holds that the use of deadly

force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable if the suspect poses no immediate threat of harm to the arresting officer or others. However, the *Garner* decision has little, if any, relevance to our present inquiry.

As the Eleventh Circuit noted in *Acoff v. Abston*, 762 F.2d at 1549 (which held that the *Garner* decision would have retrospective application insofar as the liability of municipalities was concerned), the *Garner* decision was not an entirely new and unanticipated principle of law. However, a rule must be clearly established before a police officer can be held liable for failure to follow it, and a reasonable person (in 1981) might have read the relevant appellate decisions and still have concluded that he could use deadly force to apprehend a fleeing felon. *Id.* at 1549–1550.

After reviewing the effective law in 1979, we find that constitutional principles regarding the use of deadly force to apprehend fleeing felons were not clearly established. As a matter of law, a reasonable person would not have known that shooting an unarmed fleeing felon would violate the Constitution. Accordingly, PEREZ is entitled to prevail on his defense of qualified immunity in the absence of any showing of bad faith or malice. Summary judgment on Count I of the complaint should be granted in favor of PEREZ.

### B. *Pendant State Claims*

1. Plaintiff's claim for negligence (Count II)

In reading the complaint, we note the *ad damnum* clause in count II, for negligence, requests judgment against "the defendants." However, the allegations included in that count appear to pertain to the City of Clewiston only, and not to defendant PEREZ. We therefore assume that the plaintiff's claim for negligence was only meant to apply to the defendant CITY and not to PEREZ.

■ To the extent that our assumption is incorrect, we state the following: (1) That defendant PEREZ owed no duty to the plaintiff to refrain from discharging his weapon during the attempted arrest of the plaintiff, pursuant to Fla.Stat. § 776.05 (1979); under that statute, PEREZ was permitted to use deadly force to apprehend the plaintiff, who was a fleeing felon; (2) Police department regulations limiting the use of deadly force to situations where the felon is a danger to the arresting officer or others may not be used as the basis for imposing civil liability on the police officer (*See*, Our discussion, *supra*, at page 1420) and (3) Claims for negligence against individual governmental employees are barred by Fla.Stat. § 768.28(9) (1979) where the alleged negligent act occurred while the officer/employee was carrying out a discretionary (as opposed to ministerial) function. *See*, *North Bay Village v. Braelow*, 469 So.2d 869, 871 (Fla. 3d DCA 1985). The decision to arrest an individual is a discretionary function. *Everton v. Willard* 468 So.2d 936 (Fla.1985). So, too, is the decision to prevent the arrested person from fleeing. An officer may not be held liable in tort for the consequences of the exercise of that discretion. *Everton v. Willard*, 426 So.2d 996 (Fla. 2d DCA 1983), *affirmed*, 468 So.2d 936 (1985).

2. Plaintiff's claim for assault and battery (Count III)

■ The plaintiff alleges that Officer PEREZ used a greater degree of force than was necessary under the circumstances. As we have previously stated in our discussion regarding plaintiff's civil rights claim, the force used by Officer PEREZ was authorized by Fla.Stat. § 776.05 (1979) and was therefore justified or priviledged. Pursuant to that statute, PEREZ was entitled to use that force which was necessary to effect an immediate capture of the plaintiff, regardless of the underlying felony. As PEREZ testified, the plaintiff was running away and he (PEREZ) could not catch him by chasing him (D.E. 102, pp. 19–21). As PEREZ also testified, the plaintiff had been involved in other burglaries (D.E. 102, p. 7) and would frequently leave the jurisdiction after committing them (D.E. 102, p.

31). These facts have been uncontroverted by the plaintiff.

In this count, as with the others, the plaintiff attempts to extrapolate a higher duty of care from the police department regulations allegedly in effect at the time the shooting incident occurred. It is stated that these regulations were much narrower than the standard set forth in Fla.Stat. § 776.05 (1979). As we have stated in our preceding discussions (*Supra*, at p. 1420), the police department standard is not the standard by which an officer's criminal or civil liability is measured. *Chastain v. Civil Service Board of Orlando*, 327 So.2d 230, 232 (Fla. 4th DCA 1976) and *City of St. Petersburg v. Reed*, 330 So.2d 256 (Fla.2d DCA 1976). Since the shooting of the plaintiff was priviledged as a matter of law, judgment should be entered in favor of PEREZ.

Based on all of the foregoing, it is hereby

ORDERED and ADJUDGED that the defendant PEREZ's motion for summary judgment (D.E.63) is Granted on all three (3) counts of the amended complaint. The Clerk of this Court is hereby directed to enter a judgment in favor of PEREZ forthwith.